## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

DEBRA MALONEY, ELAINE BONIN, and
DEBORAH OZIER, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiffs,

    v.

ALLIANCE COLLECTION AGENCIES, INC.,

        Defendant.

Case No.: 17-cv-1610

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Debra Maloney is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Elaine Bonin is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Plaintiff Deborah Ozier is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.     Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each plaintiff a debt allegedly incurred for personal, family or household purposes, namely medical services.

7.     Each plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debts allegedly arose from consumer transactions that included agreements to defer payment.

8.     Defendant Alliance Collection Agencies, Inc. ("Alliance") is a domestic business corporation with its primary offices located at 3916 S Business Park Avenue, Marshfield, Wisconsin 54449.

9.     Alliance is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.    Alliance is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

11.    Alliance is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Defendant is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Plaintiff Maloney*

12.    On or about December 14, 2016, Alliance mailed a collection letter to Plaintiff Maloney regarding an alleged debt, allegedly owed to "LAKESHORE MEDICAL CLINIC OAK CREEK" ("Aurora").  A copy of the letter is attached to this complaint as Exhibit A.

13.    Upon information and belief, the letter in Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Maloney inserted by computer.

2

14.     Upon information and belief, the letter in Exhibit A is a form debt collection letter used by Alliance to attempt to collect the alleged debt.

15.     The debt referenced in Exhibit A was allegedly incurred for the provision of medical services. Thus, the debt was incurred for personal, family, or household purposes.

16.     Plaintiff Maloney was not required to pay for the medical services at the time services were rendered. Instead, Aurora mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

17.     Upon information and belief, Exhibit A was the first written communication Plaintiff received from Alliance.

18.     Exhibit A contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer.  15 U.S.C. § 1692g.

> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid.If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Exhibit A.

19.     Exhibit A also contains the following:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 09/11/2015 | LAKESHORE MEDICAL CLINIC OAK CREEK | ****4266 | 8.00 |
| 10/14/2015 | LAKESHORE MEDICAL CLINIC SOUTH MILW-CHICAGO AVE | ****5165 | 5.00 |
|  | | **GRAND TOTAL** | **$13.00** |

Exhibit A.

3

20.     On or about December 22, 2016, Alliance mailed a collection letter to Plaintiff Maloney regarding an alleged debt owed to Aurora.  A copy of the letter is attached to this complaint as Exhibit B.

21.     Upon information and belief, the letter in Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Maloney inserted by computer.

22.     Upon information and belief, the letter in Exhibit B is a form debt collection letter used by Alliance to attempt to collect the alleged debt.

23.     The debt referenced in Exhibit B was allegedly incurred for the provision of medical services. Thus, the debt was incurred for personal, family, or household purposes.

24.     Like Exhibit A, Exhibit B contains the following debt validation notice:

> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Exhibit B.

25.     Exhibit B also contains the following:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 09/11/2015 | LAKESHORE MEDICAL CLINIC OAK CREEK | ****4266 | 8.00 |
| 10/14/2015 | LAKESHORE MEDICAL CLINIC SOUTH MILW-CHICAGO AVE | ****5165 | 5.00 |
| | | **GRAND TOTAL** | **$13.00** |

Exhibit B.

26.     Upon information and belief, Exhibits A and B seek to collect the same alleged debts.

27.     Plaintiff Maloney was confused by Exhibits A and B, and, upon receiving Exhibit B, was unsure whether she still had 30 days to dispute the debt.

4

28.     The unsophisticated consumer would be confused by <u>Exhibits A and B</u>, and upon receiving <u>Exhibit B</u>, would be unsure whether she still had 30 days to dispute the debt.

29.     In fact, the FDCPA only provides the consumer a right to verification of the debt and to the name and address of the original creditor within thirty days of the consumer's receipt of the *initial* debt communication containing the validation notice. 15 U.S.C. § 1692g(b).

30.     Alliance sent <u>Exhibit B</u> to Plaintiff within the 30-day verification period that commenced upon Plaintiff's receipt of <u>Exhibit A</u>. Thus, <u>Exhibit B</u> tells the consumer that the verification period is extended until 30 days after the consumer receives <u>Exhibit B</u>, which is actually false. 15 U.S.C. § 1692g(b); *see also Jones v. Ameriquest Mortg. Co.,* No. 05-CV-0432, 2006 U.S. Dist. LEXIS 3788 *24-25 (N.D. Ill. Jan. 31, 2006), *aff'd sub nom Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007) (Lender violated the Truth In Lending Act ("TILA") by providing notice of both the TILA, 3-day statutory right of rescission and a "one-week" rescission period not tied to the statute.).

31.     <u>Exhibit B</u> did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act."); *Jones*, 2006 U.S. Dist. LEXIS 3788 *24-25.

32.     The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector may provide verification upon oral notification, the debt collector must provide verification upon *written* notification. If the debtor

5

gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

33.     Plaintiff Maloney had to spend time and money investigating Exhibits A and B.

34.     Plaintiff Maloney had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A and B.

### *Facts Relating to Plaintiff Bonin*

35.     On or about August 30, 2017, Alliance mailed a collection letter to Plaintiff Bonin regarding an alleged debt, allegedly owed to "AURORA ST LUKES MEDICAL CENTER" ("Aurora").  A copy of the letter is attached to this complaint as Exhibit C.

36.     Upon information and belief, the letter in Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Bonin inserted by computer.

37.     Upon information and belief, the letter in Exhibit C is a form debt collection letter used by Alliance to attempt to collect the alleged debt.

38.     The debt referenced in Exhibit C was allegedly incurred for the provision of medical services. Thus, the debt was incurred for personal, family, or household purposes.

39.     Plaintiff Bonin was not required to pay for the medical services at the time services were rendered. Instead, Aurora mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

40.     Upon information and belief, Exhibit C was the first written communication Plaintiff received from Alliance.

6

41.     Exhibit C contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer.  15 U.S.C. § 1692g.

> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Exhibit C.

42.     Exhibit C also contains the following:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 06/10/2016 | AURORA ST LUKES MEDICAL CENTER | ****4698 | 2,849.82 |
| | | **GRAND TOTAL** | **$2,849.82** |

Exhibit C.

43.     On or about September 6, 2017, Alliance mailed a collection letter to Plaintiff Bonin regarding an alleged debt owed to Aurora.  A copy of the letter is attached to this complaint as Exhibit D.

44.     Upon information and belief, the letter in Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff Bonin inserted by computer.

45.     Upon information and belief, the letter in Exhibit D is a form debt collection letter used by Alliance to attempt to collect the alleged debt.

46.     The debt referenced in Exhibit D was allegedly incurred for the provision of medical services. Thus, the debt was incurred for personal, family, or household purposes.

47.     Like Exhibit C, Exhibit D contains the following debt validation notice:

> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

7

Exhibit D.

48.    Exhibit D also contains the following:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 06/10/2016 | AURORA ST LUKES MEDICAL CENTER | ****4698 | 2,849.82 |
| 06/13/2016 | LAKESHORE MEDICAL CLINIC SOUTH MILW-CHICAGO AVE | ****3199 | 15.00 |
| 06/29/2016 | AURORA MEDICAL GROUP FRANKLIN CLINIC | ****9993 | 15.00 |
| | | **GRAND TOTAL** | **$2,879.82** |

Exhibit D.

49.    Exhibit C and Exhibit D give conflicting deadlines.

50.    The unsophisticated consumer would be confused by Exhibit C and Exhibit D in combination, as it is unclear whether the 15 U.S.C. § 1692g(a) validation and dispute period expiration date is controlled by Exhibit C or Exhibit D for the accounts listed in duplicate.

51.    Exhibit C seeks to collect alleged Aurora medical accounts totaling a Balance of $2849.82.

52.    Exhibit D seeks to collect alleged Aurora medical accounts totaling a Balance of $2879.82.

53.    Plaintiff did not make any payment to Alliance, Aurora or anyone else, in the time period between one month before Alliance sent Exhibits C and D and the present.

54.    Exhibits C and D misrepresent the actual amount of the debt.

55.    Exhibit C says the "Balance/Amount Due" is $8215.10, while Exhibit D says the "Balance/Amount Due" $8250.25. The unsophisticated consumer would be confused as to the amount owed.

56.    Such misrepresentations are material because they mislead the unsophisticated consumer about the amount and character of the debt. 15 U.S.C. § 1692e(2)(a).

8

57.     Looking at the letters together, the unsophisticated consumer would be baffled as to whether a payment of the total balance in either of the letters would actually pay off the alleged debt.

58.     Moreover, the varying amounts may reflect an incorrect belief on Alliance's or the creditor's part that Plaintiff made a payment. Under Wisconsin law, a payment restarts the statute of limitations. *Liberty Credit Servs. v. Quinn*, 276 Wis. 2d 826, 688 N.W.2d 768 (Ct. App. 2004) ("A partial payment on the contractual obligation made before the statute of limitations has run tolls the statute and sets it running from the date of payment.").

59.     The Seventh Circuit has held that a debt collector must state the amount of the debt without "obscur[ing] it by adding confusing other information (or misinformation)." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 2000 U.S. App. LEXIS 12178 (7th Cir. Ill. 2000); *Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997).The unsophisticated consumer would be confused by Exhibits C and D, and would be unsure whether she still had 30 days to dispute the debt.

60.     Plaintiff Bonin had to spend time and money investigating Exhibits C and D.

61.     Plaintiff Bonin had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits C and D.

### *Facts Relating to Plaintiff Ozier*

62.     On or about December 13, 2016, Alliance mailed a collection letter to Plaintiff Ozier regarding an alleged debt, allegedly owed to "AURORA ADVANCED HEALTHCARE GOOD HOPE" ("Aurora").  A copy of the letter is attached to this complaint as Exhibit E.

9

63.     Upon information and belief, the letter in Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff Maloney inserted by computer.

64.     Upon information and belief, the letter in Exhibit E is a form debt collection letter used by Alliance to attempt to collect the alleged debt.

65.     The debt referenced in Exhibit E was allegedly incurred for the provision of medical services. Thus, the debt was incurred for personal, family, or household purposes.

66.     Plaintiff Ozier was not required to pay for the medical services at the time services were rendered. Instead, Aurora mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

67.     Upon information and belief, Exhibit E was the first written communication Plaintiff Ozier received from Alliance regarding the debts identified in Exhibit E.

68.     Exhibit E contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer.  15 U.S.C. § 1692g.

**Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Exhibit E.

69.     Exhibit E also contains the following:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 09/11/2015 | AURORA ADVANCED HEALTHCARE GOOD HOPE ROAD CLINIC | ****2845 | 793.60 |
| 09/22/2015 | AURORA ADVANCED HEALTHCARE MENOMONEE FALLS CLINIC | ****1266 | 5,414.05 |
| 09/28/2015 | AURORA ADVANCED HEALTHCARE WHITEFISH BAY CLINIC | ****1280 | 150.45 |
| 08/25/2015 | AURORA ADVANCED HEALTHCARE GOOD HOPE ROAD CLINIC | ****1345 | 183.70 |
| 08/28/2015 | AURORA ADVANCED HEALTHCARE GOOD HOPE ROAD CLINIC | ****6775 | 1,673.30 |
| | | **GRAND TOTAL** | **$8,215.10** |

Exhibit E.

70.     On or about December 14, 2016, Alliance mailed a collection letter to Plaintiff Ozier regarding an alleged debt owed to Aurora.   A copy of the letter is attached to this complaint as Exhibit F.

71.     Upon information and belief, the letter in Exhibit F is a form letter, generated by computer, and with the information specific to Plaintiff Ozier inserted by computer.

72.     Upon information and belief, the letter in Exhibit F is a form debt collection letter used by Alliance to attempt to collect the alleged debt.

73.     The debt referenced in Exhibit F was allegedly incurred for the provision of medical services. Thus, the debt was incurred for personal, family, or household purposes.

74.     Like Exhibit E, Exhibit F contains the following debt validation notice:

> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Exhibit F.

75.     Exhibit F also contains the following:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 09/11/2015 | AURORA ADVANCED HEALTHCARE GOOD HOPE ROAD CLINIC | ****2845 | 793.60 |
| 09/22/2015 | AURORA ADVANCED HEALTHCARE MENOMONEE FALLS CLINIC | ****1266 | 5,414.05 |
| 09/28/2015 | AURORA ADVANCED HEALTHCARE WHITEFISH BAY CLINIC | ****1280 | 150.45 |
| 08/25/2015 | AURORA ADVANCED HEALTHCARE GOOD HOPE ROAD CLINIC | ****1345 | 183.70 |
| 08/28/2015 | AURORA ADVANCED HEALTHCARE GOOD HOPE ROAD CLINIC | ****6775 | 1,673.30 |
| 09/28/2015 | AURORA ADVANCED HEALTHCARE WHITEFISH BAY CLINIC | ****1195 | 35.15 |
| | | GRAND TOTAL | $8,250.25 |

Exhibit F.

76.     Plaintiff Ozier was confused by Exhibits E and F, and unsure whether she still had 30 days to dispute the debts that were not tied to the account with an Account Number ending in 1195 or whether the validation notice applied only to debts for which she had not received a prior validation notice.

77.     Exhibit E and Exhibit F give conflicting deadlines.

78.     The unsophisticated consumer would be confused by Exhibit E and Exhibit F in combination, as it is unclear whether the 15 U.S.C. § 1692g(a) validation and dispute period expiration date is controlled by Exhibit E or Exhibit F for the accounts listed in duplicate.

79.     Exhibit E seeks to collect alleged Aurora medical accounts totaling a Balance of $8215.10.

80.     Exhibit F seeks to collect alleged Aurora medical accounts totaling a Balance of $8250.25.

81.     Plaintiff did not make any payment to Alliance, Aurora or anyone else, in the time period between one month before Alliance sent Exhibits E and F and the present.

82.     Exhibits E and F misrepresent the actual amount of the debt.

12

83.     Exhibit E says the "Balance/Amount Due" is $8215.10, while Exhibit F says the "Balance/Amount Due" $8250.25. The unsophisticated consumer would be confused as to the amount owed.

84.     Such misrepresentations are material because they mislead the unsophisticated consumer about the amount and character of the debt. 15 U.S.C. § 1692e(2)(a).

85.     Looking at the letters together, the unsophisticated consumer would be baffled as to whether a payment of the total balance in either of the letters would actually pay off the alleged debt.

86.     Moreover, the varying amounts may reflect an incorrect belief on Alliance's or the creditor's part that Plaintiff made a payment. Under Wisconsin law, a payment restarts the statute of limitations. *Liberty Credit Servs. v. Quinn*, 276 Wis. 2d 826, 688 N.W.2d 768 (Ct. App. 2004) ("A partial payment on the contractual obligation made before the statute of limitations has run tolls the statute and sets it running from the date of payment.").

87.     The Seventh Circuit has held that a debt collector must state the amount of the debt without "obscur[ing] it by adding confusing other information (or misinformation)." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 2000 U.S. App. LEXIS 12178 (7th Cir. Ill. 2000); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997).

88.     Plaintiff Ozier had to spend time and money investigating Exhibits E and F.

89.     Plaintiff Ozier had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits E and F.

## THE FDCPA

90.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

91.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

92.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in

14

liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

93.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom*. *Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

94.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-

15

1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

95.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

96.     The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt". 15 U.S.C. § 1692e.

97.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

98.     15 U.S.C. § 1692f generally prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."

99.     15 U.S.C. § 1692g requires that debt collectors make certain disclosures, that these disclosures must be made in a non-confusing manner, and that debt collectors may not communicate or engage in conduct that overshadows or contradicts these disclosures. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

16

100.    15 U.S.C. § 1692g(a)(1) requires that debt collectors disclose "the amount of the debt."

101.    15 U.S.C. § 1692g(a)(3) requires that debt collectors disclose that, "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

102.    15 U.S.C. § 1692g(a)(4) requires that debt collectors disclose that "if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

103.    15 U.S.C. § 1692g(a)(5) requires that debt collectors disclose that, "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

104.    Under federal law, if an alleged debtor disputes a debt within 30 days of receiving the validation notice, the debtor is required to cease debt collection efforts until it has provided verification of the debt or a copy of the judgment against the debtor.  15 U.S.C. § 1692g(b).

105.    The debt collector need not verify the debt, however, as long as it ceases its debt collection efforts.  *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480 (7th Cir. 1997) (collection agency has the option to cease all collection activity or provide verification of the debt).

106.    Under the plain language of 15 U.S.C. § 1692g, a debt collector is not required to verify a debt unless the debtor disputes the debt within 30 days of receipt of the validation notice.

107.    Whether or not the debtor requests verification of the debt, however, a debt collector's collection activities and communications during the 30-day period may not

17

overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. 15 U.S.C. § 1692g(b).

108.     Validation rights are statutory; because the debt collector is not required to verify a debt that is disputed after the 30-day validation period, 15 U.S.C. § 1692g(a)(4), the prohibition on further collection activities pending verification of a disputed debt does not apply to debts that are disputed after the 30-day period, whether or not the consumer has raised the dispute within 30 days of receiving a subsequent validation notice. 15 U.S.C. § 1692g(b); *see Paige v. Waukesha Health Sys.*, 2013 U.S. Dist. LEXIS 96962, at * 23-24 n.3 (E.D. Wis. July 11, 2013) (observing that sending a second validation notice during the validation period would implicate 15 U.S.C. § 1692g(b)); *see also Jones,* 2006 U.S. Dist. LEXIS 3788 *24-25 ("one-week" rescission notice violates TILA by implying that the consumer's statutory rescission rights are extended when they are not.

## THE WCA

109.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

110.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

111.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

18

112.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

113.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

114.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

115.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

116.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

19

117.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

118.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

119.    Wis. Stat. § 427.104(1)(m) states that a debt collector may not: "Engage in conduct in violation of a rule adopted by the administrator . . . ."

120.    The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer.  *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

121.    Count I is brought on behalf of all Plaintiffs.

122.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

123.    Exhibits B, D, and F are false, deceptive, and misleading statements that would mislead the unsophisticated consumer into believing that the validation period begins to run with her receipt of Exhibits B, D, and F rather than Exhibits A, C, and E.

124.    Exhibits B, D, and F also overshadow or contradict Exhibit A, C, and E's disclosure of the consumer's right to dispute the debt.

125.    Exhibits B, D, and F also overshadow or contradict Exhibit A, C, and E's disclosure that the debt collector will assume the debt is valid unless the consumer disputes the debt within 30 days.

126.   Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT II – FDCPA

127.   Count II is brought on behalf of Plaintiffs Bonin and Ozier.

128.   Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

129.   Exhibits C and D and Exhibits E and F are false, deceptive, and misleading statements that would mislead the unsophisticated consumer about the amount of the debt.

130.   Exhibits C and D and Exhibits E and F fail to state the amount of the debt in a non-confusing manner.

131.   Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(1).

## COUNT III – WCA

132.   Count III is brought on behalf of all Plaintiffs.

133.   Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

134.   Exhibits B, D, and F are false, deceptive, and misleading statements that would mislead the unsophisticated consumer into believing that the validation period begins to run with her receipt of Exhibits B, D, and F rather than Exhibits A, C, and E.

135.   Exhibits B, D, and F also overshadow or contradict Exhibit A, C, and E's disclosure of the consumer's right to dispute the debt.

136.   Exhibits B, D, and F also overshadow or contradict Exhibit A, C, and E's disclosure that the debt collector will assume the debt is valid unless the consumer disputes the debt within 30 days.

137.     Exhibits B, D, and F were sent as subsequent attempts to collect debts just days after the existence of these debts was first disclosed.

138.     Defendant is a licensed collection agency.

139.     Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

140.     Plaintiffs bring this action on behalf of two classes.

141.     Class I ("Validation Period Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form represented by Exhibits A and B or Exhibits C and D or Exhibits E and F to the complaint in this action, (c) where the letters were sent within 30 days of each another, (d) seeking to collect a debt for personal, family, or household purposes, (e) between November 20, 2016 and November 20, 2017, inclusive, (f) that was not returned by the postal service.  All named Plaintiffs are named representatives of this class.

142.     Class II ("Amount of Debt Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form represented by Exhibits C and D or Exhibits E and F to the complaint in this action, (c) where the letters were sent within 30 days of each another, (d) seeking to collect a debt for personal, family, or household purposes, (e) between November 20, 2016 and November 20, 2017, inclusive, (f) that was not returned by the postal service.  Plaintiffs Bonin and Ozier are named representatives of this class.

143.     Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

144.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

145.    Plaintiffs' claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

146.    Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

147.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

148.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  November 20, 2017

**ADEMI & O'REILLY, LLP**

By:    /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110

23

(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com