**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

DEBRA MALONEY, ELAINE BONIN, and
DEBORAH OZIER, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiffs,

    vs.

                                    **Case No. 17 CV 1610**

ALLIANCE COLLECTION AGENCIES, INC.,
                          Defendants

---

### DEFENDANT, ALLIANCE COLLECTION AGENCIES, INC.'S, BRIEF SUPPORTING RULE 12(C) MOTION FOR JUDGMENT OF DISMISSAL

---

### I.      INTRODUCTION AND SUMMARY OF ARGUMENT

In this action brought under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*, ("FDCPA") Defendant Alliance Collection Agencies, Inc. ("Defendant"), moves to dismiss the Plaintiffs' Complaint containing three separate and distinct causes of action made by three separate Plaintiffs against the Defendant. After pleadings are closed, a party may move for judgment on the pleadings. FRCP 12(c).

Defendant submits that Plaintiffs' Complaint, which alleges that Defendant sent two validation letters to the Plaintiffs, fails to allege a violation of the FDCPA. When two letters are sent more than 30 days apart, or even when the second is sent within the 30-day dispute period of the first, merely sending them in this way does not violate the Act. Neither

1

does a violation of the Act occur when the indebtedness changes, as happens when additional debts are listed between the time the first letter goes out and the time the second letter is mailed. Courts have near-universally held that giving the notice required by the Act more than once—in more than one letter—simply does not violate the Act, and if anything, the second notice serves to merely extend or renew the period in which the debtor is entitled to dispute the debt. Agencies are certainly entitled to register and respond to disputes made by debtors whenever a dispute is made, whether verbally or in writing. The Plaintiffs' complaints about the formal time period are therefore much ado about nothing. In a world where a collection agency is attempting to persuade a debtor to voluntarily pay a debt, it is not surprising that debts are verified whenever they are disputed. And while debtors are entitled to certain dispute periods under the provisions of the Act, nothing prevents a debt collector from honoring more or longer periods. In this case, there is no allegation that the defendant would not have honored a dispute during any of the periods set forth in the letters.

For these reasons, as further elaborated in this brief, Defendant submits that the Plaintiffs' claims contained in their joint Complaint should be dismissed.

## II.    THE COMPLAINT

The Complaint includes three distinct plaintiffs, each of whom has a separate claim arising from individual circumstances. The three plaintiffs are similar in that they (1) bring claims against the same Defendant and (2) all involve a given plaintiff receiving two separate but very similar debt collection notices from the Defendant over the course of a few days. ECF#1 ¶ 12, 20, 35, 43, 62 and 70; Exhibits A-F.

2

In brief, the plaintiffs do not allege that any of the six letters taken "individually" would represent a derogation of their rights under the FDCPA. Instead, the Plaintiffs argue that the receipt of the second letter creates confusion about the status of their rights under the first letter (ECF#1 ¶ 123-126) and, with respect to Plaintiffs Bonin and Ozier, confusion about the amount owed (ECF#1 ¶ 129-131), thereby violating FDCPA §1692e, §1692e (10), §1692f, §1692g(a)(1-5) and §1692g(b). ECF#1, ¶ 121-131. The Complaint concludes with similarly supported class action claims.  ECF#1, ¶ 140-147.

### a. The Maloney Letters

Plaintiff Maloney alleges that on December 14, 2016, she received a debt collection notice (Exhibit A) from the Defendant for $13.00 and that included a standard 30-day validation notice advising her of rights to contest the debt within 30 days, pursuant to the FDCPA, which states:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

ECF#1 ¶ 12-19. No allegations or claims are made challenging the sufficiency of this notice.  Plaintiff alleges that on December 22, 2016, she received a nearly identical letter (Exhibit B) from the Defendant, for the same amount ($13.00), and containing an identical validation notice. ECF#1 ¶ 20-26. Plaintiff Maloney does not here challenge the validity of the underlying debt obligations. She does not allege that the Defendant did fail, or would

have failed, to honor either deadline created by the validation notices.  She does not allege that she ever attempted or intended to dispute the debt.

### b.  *The Bonin Letters*

Plaintiff Bonin alleges that on August 30, 2017 she received a debt collection notice (Exhibit C) from the Defendant for $2,849.82 that included a standard 30-day validation notice advising her of a right[1] to contest the debt pursuant to the FDCPA.  Again no allegation or claims are made challenging the sufficiency of this notice.  Bonin alleges that on September 6, 2017, she received a new notice (Exhibit D) for a higher amount ($2,879.82) that reflected $30.00 of new debt, *itemized* in the notice. The additional debts are for different dates of service, new creditors, and new account numbers, contained in the lines immediately below those same itemized debts which were previously detailed in the August 30 letter. The second letter also contains the same validation notice. ECF#1 ¶ 35-42. Plaintiff Bonin does not here challenge the validity of the underlying debt obligations. She does not allege that she ever attempted or intended to dispute the debts. She does not allege that the Defendant did fail, or would have failed, to honor either deadline created by the validation notices. Notably, Plaintiff Bonin does not allege she was confused in any way by receipt of these two letters.  ECF#1, ¶50, 55, 57.

### c.  *The Ozier Letters*

Plaintiff Ozier alleges similar facts to Plaintiff Bonin: that she received a debt collection notice (Exhibit E) for $8,215.10 on December 13, 2016 and received a second notice

---

[1] Identical in content and position on the form letter to the one received by Plaintiff Maloney, as quoted above.

4

(Exhibit F) reflecting an additional and *itemized* $35.15 debt along with those same itemized debts which were previously listed on the first notice on December 14, 2016. The new debt includes a new and different date of service, a different underlying creditor and a new account number, contained in the lines immediately below the outstanding obligations detailed in the December 13 letter. The second letter also contains the same validation notice.[2] ECF#1 ¶ 74-75. Again, both letters contained a validation notice advising her of rights to dispute the debt within 30 days. ECF#1 ¶ 62-75. Plaintiff Ozier does not here challenge the validity of the underlying debt obligations. She does not allege that the Defendant did fail, or would have failed, to honor either deadline created by the validation notices. She does not allege that she ever attempted or intended to dispute the debts.

### III.    LEGAL STANDARD

#### a.  Rule 12(c)

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). If the allegations in the pleadings show a plaintiff cannot prove facts that would support a claim for relief and the moving party is entitled to judgment as a matter of law, judgment on the pleadings for the defendant is appropriate. *See N. Ind. Gun & Outdoor Shoes, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Although the court

---

[2] Identical in content and position on the form letter to the one received by Plaintiff Maloney, as quoted above.

must "view the facts in the complaint in the light most favorable to the nonmoving party," it "need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Courts may "consider matters outside the pleadings that are subject to judicial notice without converting the motion [for judgment on the pleadings] to one for summary judgment." *Design Basis LLC v. Campbellsport Bldg. Supply Inc.*, 99 F. Supp. 3d 899, 917-18 (E.D. Wis. 2015) (footnote omitted) (citing *United States v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991)); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

In the federal court system, the basic requirements for a complaint are contained in Rule 8(a) of the Federal Rules of Civil Procedure which states that a "pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought ..."

These basic requirements of Rule 8(a) were clarified by the decisions of the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To satisfy these minimum pleading requirements, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

6

for the misconduct alleged." *Id.* Although it is true that Courts must accept "all well-pleaded allegations of the complaint as true," *Albright v. Oliver,* 510 U.S. 266, 268 (1994); *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999), courts are not required to use a divining rod to supply missing, essential facts when testing the sufficiency of a complaint.

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986), and Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.*" Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). Conclusory allegations that require a court to speculate are inadequate to support a claim as a matter of law. *See, e.g., Yeftich v. Navistar. Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). "[N]aked assertion[s] devoid of further factual enhancement" and "mere conclusory statements" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) ("[C]onclusory allegations, without more, are insufficient to state a claim."). Therefore ". . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal* at 678 (quoting *Twombly*, 550 U.S. at 557).

In determining whether factual allegations are sufficient to state a claim, additional supporting facts must be pled to make that claim plausible. Without these additional facts,

the claim is not entitled to an assumption of truth, as the court may disregard patently implausible factual claims. *Swanson v. Citibank*, NA, 614 F.3d 400, 405 (7th Cir. 2010), citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)("abstract recitations of the elements of a cause of action or conclusory legal statements" do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law."). *Iqbal*, following *Twombly*, adds that assessing the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1951. Therefore, when an allegation of fact is not consistent with judicial experience and common sense, it is not entitled to an assumption of truth.

However, documents attached to a Rule 12(b)(6) motion, and by extension a Rule 12(c) motion, are considered part of the pleadings if the complaint explicitly refers to them and they are central to the plaintiff's claim. The court may consider such documents while ruling on a motion to dismiss without converting the motion into one for summary judgment. *Venture Assocs. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993); *see also Duferco Steel Inc. v. M/V Kalisti,* 121 F.3d 321, 324 n. 3 (7th Cir.1997); *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994). Also, it is undeniable that all references to the letters have to be to the *whole* letter, and reasonable inferences are entitled to be drawn from the context of the language contained in them. *U.S. v. Wood*, 925 F.2d 1580, 1581-2 (7th Cir. 1991)(documents incorporated by reference to the pleadings may be taken into consideration on a Rule 12(c) motion); *Keen Omnibus Inter'l Inc.,* 98 C 3947, 1998 WL 485682, at *3 (N.D. Ill. August 12, 1998).

Moreover, the whole letter must be viewed within the context of any other letters sent before the subject letter or other communications with the debtor.

Inconsistencies within a pleading, like those found in Plaintiff's Complaint here, can result in a plaintiff "plead[ing] himself out of court." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) (internal quotation marks omitted). *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (quoting *United States v. N. Trust Co*., 372 F.3d 886, 888 (7th Cir.2004)) Moreover, where the legal premise upon which a claim is based is simply wrong, even assuming the alleged facts as true, the action must be dismissed for failure to state a claim.

### b. Standards under the FDCPA

As referenced in the Plaintiffs' complaint, the Seventh Circuit uses the "unsophisticated consumer" standard to decide claims under the FDCPA. As explained in *Lox v. CDA, Ltd.,* "[t]he unsophisticated consumer may be 'uninformed, naive, [and] trusting,' but is not a dimwit, has 'rudimentary knowledge of the financial world,' and 'is capable of making basic logical deductions and inferences.'" 689 F.3d 818, 822 (7th Cir. 2012) (internal citations omitted). When interpreting claims against a collection letter, the court will not entertain a plaintiff's "bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *McMillan v. Collection Professional Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 414 (7th Cir. 2005); *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir. 2000).

To that end, a mere claim of confusion is not enough: a plaintiff must show that the challenged "language of the letters unacceptably increases the level of confusion." *Johnson*

*v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir.1999) (emphasis omitted). Under this standard, a plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact "unless a significant fraction of the population would be similarly misled." *Pettit,* 211 F.3d at 1060; *see also Taylor v. Cavalry Inv., L.L.C.,* 365 F.3d 572, 574-75 (7th Cir.2004). In sum, courts "finding that a debt collector's communication is confusing have only done so when this confusion bears the potential to adversely affect the debtor, distinguishing "simple confusion" from the kind of "legal confusion" contemplated under the FDCPA. *Curry v. AR Resources, Inc.*, 16-517, *12-13, (D.C.N.J. November 4, 2016), citing *Young G.L.A. Collection Co., Inc.,* Case No. 1:11-CV-489, 2011 WL 6016650, at *2 (S.D. Ind. Dec.1, 2011) and *Brenker v. Creditor's Interchange, Inc.,* No. 03 Civ. 6500, 2004 WL 594502, at *2 (S.D.N.Y. Mar. 25, 2004) ([T]he two letters created no reasonable possibility of confusion *in derogation of the debtor's rights*.") (emphasis added). The *Curry* court continued,

> To be sure, in the presence of any arguable abnormality in a debt collection letter, a litany of questions can be constructed suggesting debtor uncertainty akin to those cobbled together in *Christopher* ... That alone does not amount to liability under the FDCPA. Put directly, this Court does not agree with Ms. Curry that the least sophisticated debtor would be confused to the detriment of her rights under the FDCPA by the receipt of a second letter that contains a 30-day validation notice.

*Id.* at 13. Moreover, the letter must be read in its entirety, not seek out isolated words or phrases that, absent context, might confuse. *Keen Omnibus Inter'l Inc.,* 98 C 3947, 1998 WL 485682, at 3 (N.D. Ill. August 12, 1998).

More broadly, the Seventh Circuit has also established that there are "three distinct categories" of cases alleging that a collection letter is confusing. *Lox v. CDA, Ltd.,* 689

F.3d 818, 822 (7th Cir. 2012); *Ruth v. Triumph Partnerships,* 577 F.3d 790, 800 (7th Cir. 2009). The first is "cases involving statements that plainly, on their face, are not misleading or deceptive." *Id.* The second category is for those cases involving "statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer." *Id.* In such cases, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* Finally, there are those statements in letters that "are clearly misleading on their face," and the plaintiff need not present any extrinsic evidence to prevail. *Id.* As will be argued below, the Defendant believes the present claims fall within the first *Lox* category—that the second letters here are not facially misleading or facially deceptive.

## IV.    ARGUMENT

### a.  The second letters received do not "overshadow" the first letters because the receipt of two debt collection letters is not objectively misleading.

The letters sent by the Defendant to all three Plaintiffs comport with the explicit requirements and purpose of the FDCPA. According to Plaintiffs, because they received a second letter less than 30 days after receiving a first letter from the defendant, the second letter "overshadows" the statutory rights conferred in the first letter. The Plaintiffs allege that the second letter "tells the consumer that the verification period is extended 30 days after the consumer receives [the second letter]," and that therefore the second letter "did not effectively convey to the consumer their rights under the FDCPA" because the actual date this statutory right began running was receipt of the first letter. ECF#1 ¶ 30-31.

11

Leaving aside the technical inaccuracy of the first of Plaintiffs' allegations, the Plaintiffs fail to establish a prima facie case that sending a second letter violated the FDCPA. Two threshold legal principles should be addressed before dealing with the specific allegations made by the Plaintiffs.

The first is that a viable overshadowing claim in the context of validation periods must involve conduct by a defendant that makes the validation window smaller, or makes it appear smaller. In support of the allegation that Defendant's second letter overshadows the first, Plaintiffs rely (ECF#1 ¶ 31, 59, 87) on *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F. 3d 872 (7th Cir. 2000), although this opinion does not address the issue of multiple 30-day FDCPA notices. Instead, *Miller* concerns the completeness of "amount of debt" owed statements and says nothing about the responsibilities of creditors to communicate statutory rights across multiple letters. ("The plaintiff (the debtor) claims that the defendants violated the Act by failing to state "the amount of the debt" in the dunning letter of which he complains." *Id.* at 874.)

Defendant submits that *Zemeckis v. Global Credit Collection Corp.* 679 F.3d 632 (7th Cir. 2006) is more instructive on §1692g overshadowing issues similar to those presented here. In its holding for the Defendant, *Zemeckis* differentiates between "puffery" (i.e., "act now," provisions) and a truly harmful overshadowing of a debtor's rights: one that involves additional financial penalties if the debtor does not act in a time period *shorter* than the 30-day period required by § 1692g. *Id.* at 636. Accordingly, under 15 U.S.C. §1692g, "[Consumer confusion depends] upon the mistaken impression that some action must be taken *before the end* of the thirty day validation period." (emphasis added.) *Seplak v. IMBS*,

1999 WL 104730 (N.D. Ill. Feb. 23, 1999). By the holding of *Zemeckis,* the Plaintiffs here fail to establish a real or harmful overshadowing of their rights.

The second threshold principle is that sending a second validation notice after the 30-day period of the first notice cannot overshadow the first notice, because the first period has ended. Accordingly, the holding in *Curry v. AR Resources, Inc.* 16-517, *12-13, (D.C.N.J. November 4, 2016), and the nationally diverse cases it relies on, settle the issue of whether a second notice sent outside the 30-day period overshadows the debtor's rights: "*a plaintiff does not state a claim* when she alleges that she received a subsequent debt collection letter containing a second identical 30-day validation notice." (emphasis added.) *Curry v. AR Resources, Inc.*, 16-517, *12-13, (D.C.N.J. November 4, 2016) (Defendant's Motion to Dismiss Granted). *Cf. Christopher v. RJM Acquisitions LLC*, No. CV-13-02274-PHX-JAT, 2015 WL 437541 (D. Ariz. Feb. 3, 2015). On Similar facts, the court in *Brenker v. Creditors Interchange, Inc.*, No. 03 Civ. 6500 LTS DFE, 2004 WL 594502, at *2 (S.D.N.Y. Mar. 25, 2004) granted the defendant's motion for summary judgment and reached the same conclusion: a second letter "did nothing to suggest diminution of the initial period" and "the initial letter accurately notified [the plaintiff] that she had thirty days from receipt of *that* letter in which to request validation." (emphasis added).

The court in *Arend v. Total Recovery Services*, 05-CV-3064 (DLI)(JMA) *4-5 (E.D.N.Y. July 24, 2006) similarly observes that, "if the Second Letter was sent after the validation period expired, then the Second Letter does not contradict Plaintiff's right to dispute the debt because pursuant to §1692g the debt may be assumed valid if a debtor does

not dispute the debt during the validation period." *See also Young v. G.L.A. Collection Co., Inc.*, 2011 WL 6016650, at *1 (S.D. Ind. Dec. 1, 2011).

Having established that successive letters containing a validation notice do not successfully invoke an overshadowing claim when the second notice follows the end of the first 30-day period, we come to the situation as in this case. Here the Plaintiffs have alleged that the Second Letter was sent *within* the 30-day period stated by the First Letter. ECF#1 ¶ 20-26, 35-42, 74-75. However, this allegation is not dispositive: in fact, courts dealing with second validation notices sent *within* the period created by an earlier validation notice reach the same conclusion as *Curry*.

Anytime a second letter is sent *within* the 30-day validation period of a first letter the inquiry becomes more fact specific because speaking generally a second letter can overshadow the first. But even then the Complaint must allege how that second letter "unacceptably increases the level of confusion." *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir.1999) A Plaintiff does not state a claim by simply alleging that a second validation notice is sent shortly after the first. Said another way, case law makes plain that sending a second validation notice inside the validation period of the first is insufficient on its own to establish a violation of the FDCPA. In *Bridges v. Performant Recovery*, 5:15-CV-38 (CAR) *6 (M.D. Ga. December 14, 2015) Plaintiffs asserted that, "the statement in the Second Letter is false because the 30-day period begins to run when the First Letter is received [...] Thus [according to the Plaintiffs] sending the Second Letter within the original 30-day period 'overshadows the disclosure of the actual 30-day period.'" The similarity to the allegations in the Plaintiffs' Complaint here are clear. ECF#1

14

¶ 28, 30, 50, 78. The court disagreed however, and in granting the defendant's motion to dismiss concluded that,

> Both the First and Second Letter accurately notify Plaintiff of the validation period and related rights under § 1692g. Defendant's Second Letter does not overshadow the 30-day period allowed to dispute the debt or shorten this 30-day period. Each letter simply states Plaintiff may dispute the debt within 30 days from the receipt of *that* letter, and Plaintiff has alleged no facts that Defendant would have refused to honor this extended deadline.

*Bridges v. Performant Recovery* at *8. (emphasis added.)

In granting defendants' motions to dismiss as to the overshadowing claim on the basis of a second validation letter, the court in *Gesten v. Phelan Hallinan* reached the same, logical conclusion:

> Each letter states that Plaintiff may dispute the debt within thirty days of his receipt of *that* letter. There is no evidence that Defendant would not have honored this deadline. Defendant's required notice was therefore not overshadowed or contradicted. Instead it was expanded and emphasized.

*Gesten v. Phelan Hallinan*, *PLC* 14-60565-CIV at *8, 57 F. Supp. 1381 (S.D. Fla. 2014). Courts confronted with a second validation notice received inside the 30-day period created by the first notice have reached the same conclusion as courts dealing with a second notice sent outside the period: that second notices function to expand the time a debtor has to contest the debt. Here, Plaintiffs Maloney, Bonin and Ozier make a common and foundational allegation identical to the one made by the plaintiffs across these cases: that they received a second letter within the validation period of the first. None of the plaintiffs have alleged that the Defendant would not honor the "larger window" effectively created by the second validation notice.[3] Plaintiffs cite (ECF#1 ¶ 108) to dicta in *Paige v.*

---

[3] It is also worth taking a step back, and noting exactly what the FDCPA contemplates: that if asked, a debt

*Waukesha Health Sys.,* 12-C-0601 *15 (E.D. Wis. July 11, 2013) regarding cases under a separate statute (the TILA) to conjure a rule that whether the second notice is inside or outside the validation period of the first is somehow dispositive, while ignoring Waukesha's legal conclusion: "Here, going beyond the statutory minimum did not create a violation." *Id.* at *16 (Defendant's motion to dismiss count III granted.) Applying this standard to the allegations of Plaintiffs Maloney, Bonin and Ozier leads to the obvious conclusion that they have not alleged facts sufficient to state a claim under the FDCPA.

In addition, the argument that a second validation notice "overshadows" the first is also unavailing because it is logically inconsistent with the legislative intent and purpose of the FDCPA, as cited in the Plaintiff's Complaint. ECF#1 ¶ 91-92. Such a conclusion is supported by *Schwartz v. Enhanced Recovery Company LLC*, where the Court observed,

> The alleged violation arises from a practice that protects consumers: this notice is part of a form letter that is routinely sent to multiple addresses over the course of several years in order to ensure that at least one of the letters, containing the required validation notice, is received. This practice, aimed at informing consumers of their rights, comports with the FDCPA's purpose.

*Schwartz v. Enhanced Recovery Company LLC,* 15-CV-1518 (CBA) (SMG) at *8 (E.D.N.Y., Mar. 30, 2016) (Defendant's Motion to Dismiss for Failure to State a Claim Granted.) The line of argument likely to be made by Plaintiffs leads to the perverse conclusion that they, and any plaintiffs similarly situated, would be better off were they

---

collector would "obtain verification of the debt or obtain a copy of a judgment and mail... a copy of such judgment or verification." That a debt collector would honor such a request regardless of the timing is logically consistent with what a debt collector would want—for a debtor to be convinced that a debt is valid, and therefore be more likely to make payment on the debt. It is reasonable for this Court to draw such an inference because assessing the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1951.

16

*not* reminded or advised of their rights under the FDCPA in subsequent communications from the Defendant: that by repeating the debtor's rights under the statute, the Defendant is being unscrupulous. As the court concludes in *Brenker*, "if anything, [the second letter] restarted the period, thereby effectively extending [the p]laintiff's opportunity to seek validation of the debt." *Brenker v. Creditors Interchange, Inc.*, No. 03 Civ. 6500 LTS DFE, 2004 WL 594502, at *2 (S.D.N.Y. Mar. 25, 2004) (Defendant's Summary Judgment Motion Granted).

Contrary to the reasonable interpretations of the FDCPA adopted by several District Courts, Plaintiffs makes a straightforward allegation that is plainly insufficient to state a claim. The alleged sending of two validation notices is simply not enough. The validation notice that Plaintiffs received in their second letter was neither confusing, nor was it false. Accordingly, Plaintiffs' claims under Count I of the Complaint should be dismissed. Further, Plaintiffs' claims in Count I under §1692f lack merit and support in their allegations, because they have not alleged that any practices of the Defendant are generally "unfair and unconscionable," or within the specific prohibited categories created by §1692f(1) through (8). See *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470 (7th Cir. 2007) ("The phrase 'unfair and unconscionable' is as vague as they come.")

The alleged fact that Plaintiffs Bonin and Ozier received a second letter to advise them of a new or additional debt distinguishes their situation from that of Plaintiff Maloney, who received two letters for the same amount of debt. As a result, Bonin and Ozier's claims in Count II under §1692e need to be analyzed both independently and as a "component" of their overshadowing claims under §1692g, an analysis to which we now turn.

17

**b. With regard to Plaintiffs Bonin and Ozier, the second letters received are not false or misleading as to the amount owed.**

Plaintiffs Bonin and Ozier allege Count II in addition to Count I: effectively claiming that their letters were doubly misleading, as to both amount and as to the time they had to contest the debt. *Arguendo*, the opposite conclusion could be as easily be asserted: that an unsophisticated consumer is *less* likely to be confused *because* new debts were added, and overshadowing becomes *less* probable because the addition of a new debt would *require* a new validation notice to comply with the FDCPA. In any event, Plaintiffs Bonin and Ozier do not allege that the debts listed in the letters they received were incorrect. The letters they received would not be confusing to an unsophisticated consumer.

Plaintiffs Bonin and Ozier allege that the two letters they received would mislead the unsophisticated consumer because they state different amounts of debt. ECF#1 ¶ 54-56; 82-84. The Plaintiffs again return to their citation to *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F. 3d 872 (7th Cir. 2000) and its conclusion that a debt collector must plainly state the amount owed and cannot "obscure it by adding confusing other information or misinformation." In *Miller,* a letter merely stated the unpaid principal balance, without stating the amount of accrued interest and other charges, and therefore without stating the true "amount of debt," as required by FDCPA §1692g(a)(1). *Id*. at 875. Applying that authority to this case, the plaintiffs allege *both* letters they received misinform the consumer as to the actual amount of debt (ECF#1 ¶ 54, 82) although they do not assert a *Miller*-type claim that the amount present on Exhibits C-F is *incomplete*, and offer no allegation as to a differing actual amount of debt, i.e. there is no allegation

that either of the debts stated in the successive letters are false. The inference to be drawn is that both debts in the successive letters are true. Nor is it surprising, in the context of debt collection generally, that a debt as stated in a first letter is increased in a second letter. Giving the debtor the opportunity to dispute the new debt, with a corresponding new 30-day period within which to dispute the debt is exactly what the FDCPA requires.

In fact, an unsophisticated consumer would not be misled by the debt amounts in these letters, either in isolation or (more importantly to the Plaintiffs' claims) in light of the first letter received. Examining the two letters side by side, an unsophisticated consumer would see two differences: a different amount owed in the second letter and, immediately above this different number, *new items* with different dates of service, a different location of service and a different account number from those listed on the previous notice. Put simply, it is easy to see why the numbers are different. The plaintiffs' claim must necessarily be based on their seeing only the new amount of total debt and frankly nothing more. Plaintiffs then focus only on the totals of the two letters without reading the whole letters, and reach the illogical legal conclusion that the unsophisticated consumer would then be misled by the amounts, while ignoring the itemization of this new obligation. All references to the letters have to be to the *whole* letter, and reasonable inferences are entitled to be drawn from the context of the language contained in them. *U.S. v. Wood*, 925 F.2d 1580, 1581-2 (7th Cir. 1991). In fact, an objective unsophisticated consumer would clearly draw the reasonable inference that the different amounts in the two letters were the result of adding in these new debts. While it does not resolve the issue under an objective test, it is telling that Plaintiff Bonin does not allege she was confused by this new information.

Plaintiffs Bonin and Ozier do not allege that the amounts listed on the two letters are incorrect—instead they offer the conclusory and wholly unsupported statement that, "Exhibits [C, D, E and F] misrepresent the actual amount of debt." ECF#1 ¶ 54, 82. The addition of new debts, properly itemized, does not confuse the unsophisticated consumer for §1692g purposes. This conclusion is supported by the plain language of the FDCPA, and has implications for the claims of Plaintiffs Bonin and Ozier under §1692e. If a notice has been found to comport with §1692g of the FDCPA (as argued above) it becomes logically difficult to conclude that the letter was nevertheless false under § 1692e(10) as Plaintiffs Bonin and Ozier allege. ECF#1 ¶ 56, 84. This is because use of a "false or deceptive means" (§ 1692e(10)) is all but certain to "overshadow" (§ 1692g) a previous proper statement. Conversely, finding that a defendant's statements were proper and free from overshadowing implies that there was no subsequent falsehood or misrepresentation. As the Court observes in *Caprio v. Healthcare Revenue Recovery Grp, LLC*, "[w]hen allegations under 15 U.S.C. § 1692e(10) are based on the same language or theories as allegations under 15 U.S.C. § 1692g, the analysis of the §1692g claim is usually dispositive." *Caprio v. Healthcare Revenue Recovery Grp, LLC*, 709 F.3d 142, 155 (3d Cir. 2013). Put simply, the perfunctory raising of a § 1692e claim as to the correct amount owed does not give Bonin and Ozier a second bite at the §1692g apple. Since Plaintiffs Bonin and Ozier fail to allege facts to support claims that the letters received were improper under §1692g, and since they have not alleged any other facts supporting a misrepresentation by the Defendant, it follows that their claims under §1692e must fail.

Case 2:17-cv-01610-NJ   Filed 05/02/18   Page 20 of 26   Document 15

The facts alleged by Plaintiffs Bonin and Ozier effectively suggest that they were given a new 30-day period to contest their debts—a right that the FDCPA entitles them to.[4] After all, if the debt collector grants a consumer another 30-day dispute period, it would follow that the consumer has the right to dispute the debt within that period and to receive any and all of the benefits of doing so. And there is no allegation by the Plaintiffs of a contrary intent or indication by the Defendant. Because they have not alleged facts to suggest that the letters they received stated an incorrect amount of debt, or failed to include the amount of debt, their claims under FDCPA §1692e(10), and §1692g(a)(1) contained in Count II should be dismissed. Because they have not alleged facts sufficient to show an unsophisticated consumer would be confused by these letters, either in terms of amount owed or by virtue of receipt of a second validation notice (as explained in the preceding section), their claims under FDCPA §1692g in both Counts I and II should likewise be dismissed. Finally, Plaintiffs' claims under §1692f lack merit and support in their allegations, because they have not alleged that any practices of the Defendant are generally "unfair and unconscionable," or within the specific prohibited categories created by § 1692f(1) through (8). See *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470 (7th Cir. 2007) ("The phrase 'unfair and unconscionable' is as vague as they come.")

**c. The statements contained in the letters are not material because they do not interfere with the Plaintiffs' ability to make intelligent choices and do not actually limit any statutory rights.**

---

[4]      Clearly, Plaintiffs would have been entitled to a full 30 days to dispute the "new" debt contained in the second notices. Indeed, an argument could be made that the new *total* contained in the second letter was itself entitled to a new 30 day period to register a dispute.

Case 2:17-cv-01610-NJ   Filed 05/02/18   Page 21 of 26   Document 15

In order for a statement in a letter to be actionable it must be material. A statement cannot mislead unless it is material." *Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 758 (7th Cir. 2009). After all, "[t]he purpose of the Fair Debt Collection Practices Act is to protect consumers, and they don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision." *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 628 (7th Cir. 2009). In this context, a statement is material if it would "influence a consumer's decision to pay a debt in response to a dunning letter." *Id.* The same standard had been recently adopted by the Eighth Circuit in *Hill v. Accounts Receivable Services,* 16-cv-00219-DWF-BRT at *3 (8th Cir. April 19, 2018). This is not dissimilar from the basic tenet under the FDCPA that to be legally confusing the language of the letters must "unacceptably increase the level of confusion so as to materially *affect the debtor's rights* under the FDCPA." *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir.1999) (emphasis added); *Curry v. AR Resources, Inc.*, 16-517, *12-13, (D.C.N.J. November 4, 2016).

Under the standards of *Hahn, Muha* and now *Hill*, a misrepresentation or false statement is only actionable under the FDCPA if the statement will interfere with the consumer's ability "to choose intelligently" their response to the debt collector, or otherwise cause the consumer to give up a legal right provided under the FDCPA. *Hahn v. Triumph Partnerships,* 557 F.3d 755, 757-58 (7th Cir. 2009). For the Plaintiffs to prevail on any of their claims, they must allege facts to show that the language is material, assuming that the letters are false and misleading. Representations challenged under §1692e and §1692f are considered through the perspective of an unsophisticated consumer.

A finding that a statement had a material impact on an individual's intelligent choice must necessarily be based on material facts that are absent from the Plaintiffs' Complaint. Plaintiff Bonin does not even allege that she was confused by receipt of these two letters— merely that they were received. ECF#1 ¶ 35-61. Plaintiffs Maloney and Ozier do allege that they were confused—effectively, that *their confusion* was the material limitation on their ability to choose a course of action regarding the alleged debt. ECF#1 ¶ 27, 76. But importantly, none of the Plaintiffs have alleged the Defendant would not honor a dispute under the second 30-day notice, and no Plaintiff has alleged they attempted to dispute these debts.

Searching through the Plaintiffs' allegations of fact for a material limitation of their decision-making is to ignore the Complaint's main thrust— that the statements of the Defendant are *per se* misleading to a theoretical "unsophisticated consumer." But nonetheless, there are not sufficient allegations of such actions to survive this test for materiality. The Plaintiffs' allegations do not materially violate the Act.

In sum, the Plaintiffs here have not offered allegations of fact that the statements offered by the Defendant, either in terms of the amount owed or the time period to dispute the debt, represented a material limitation on their ability to choose intelligently. Stated another way, the plaintiffs do not allege facts to plausibly support claims that the letters "unacceptably increase[d] the level of confusion so as to materially *affect the debtor's rights* under the FDCPA." *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir.1999) (emphasis added). Any allegations that they were confused are simply conclusions of law to which this court need not provide any deference. Assuming *arguendo* that the statements

contained in these letters would mislead an unsophisticated consumer—that one of the plaintiffs became confused about the deadline to dispute the debt upon receipt of the second letter—the receipt of a second letter will only be material in the sense of *expanding* on their rights as guaranteed by the FDCPA, and especially so without any allegation that the debt collector would not honor a dispute under that second, extended time period. Again, following the reasoning of *Brenker v. Creditors Interchange, Inc.*, No. 03 Civ. 6500 LTS DFE, 2004 WL 594502, at *2 (S.D.N.Y. Mar. 25, 2004) "if anything, [the second letter] restarted the period, thereby effectively extending [the plaintiff's] opportunity to seek validation of the debt." The FDCPA grants debtors a 30-day window in which to consider whether they will or will not dispute the debt. The Defendant has done nothing to make this window smaller or a more difficult task through which to climb. Plaintiffs' statutory right is stated plainly on the face of all letters received by all plaintiffs, together with detailed itemizations of the debts included in them. ECF#1, Exhibits A-F. In short, the only effect of the language was to extend further rights to the Plaintiffs. For these reasons, any allegations claiming that the letters were confusing to the Plaintiffs are not material violations of the Act.

### d. The Wisconsin Consumer Act claims fail as Well

Claims made under the Wisconsin Consumer Act, §427.104(1)(g) and (h), fail too. First there are no facts to support that the letters threatened or harassed the Plaintiffs, either by communicating with such frequency or at such unusual hours, or by engaging in conduct which could reasonably be expected to harass plaintiffs. To the extent the allegations claim violations of state law as mirroring those of federal law, such claims by statute cannot be

maintained. See §425.301(4), Wis. Stats. ("for or against") *Bruesewitz v. Law Offices of Gerald E. Moore & Assoc., P.C.,* 2006 WL 3337361 at *3 (W.D. Wis. Nov.15, 2006). And with the dismissal of the federal claims this court would be wise to deny any supplemental jurisdiction to entertain these baseless state law claims. The entire Complaint of the Plaintiffs should be dismissed.

## V. CONCLUSION

The Plaintiffs' Complaint alleging violations of the FDCPA §1692e, §1692e(10), §1692f, §1692g(a)(1-5) and §1692g(b) consists of "conclusory allegations without more, [that] are insufficient to state a claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In support of the Complaint, the Plaintiffs have offered as evidence the six letters sent by the Defendant as Exhibits A-F. Far from bolstering the Plaintiffs' allegation, these letters are useful in resolving the issue because they display concretely that the communications from the defendant were not misleading, unfair, or confusing to the unsophisticated consumer. Courts interpreting the FDCPA have reached the sound conclusion that the mere sending of a second collection letter containing a validation notice does not constitute a violation of the statute. It is likewise clear that the claims made by Plaintiffs Bonin and Ozier regarding the amount of debt fail on the grounds of both common sense and case law that establish what constitutes a misleading statement. Finally, with regard to all claims and all plaintiffs, Plaintiffs have not asserted facts establishing that a material limitation was placed on their decision-making by any action of the Defendant or the contents of Defendant's letters.

Because the Plaintiffs have failed to state any claim that the Defendant has violated the FDCPA, their claim against the Defendant should be dismissed pursuant to FRCP 12(c).

Dated this 30th day of April, 2018.

Respectfully submitted,

BY:    /s/David M. McDorman_____
David M. McDorman
Attorney at Law
613 Williamson St., Suite 201
Madison, WI 53703
(608) 271-2202
(608) 271-4009
david@mcdormanlaw.com
Attorney for Defendant.

Case 2:17-cv-01610-NJ   Filed 05/02/18   Page 26 of 26   Document 15