# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

DEBRA MALONEY, ELAINE BONIN, and
DEBORAH OZIER, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiff,

vs.

ALLIANCE COLLECTION AGENCIES, INC.,

        Defendant.

Case No.: 17-cv-1610

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF DISMISSAL**

Hon. Nancy Joseph

Plaintiffs Debra Maloney, Elaine Bonin, and Deborah Ozier (collectively "Plaintiffs"), through counsel, submit the following brief in opposition to Defendant Alliance Collection Agencies, Inc.'s ("ACA" or "Defendant") motion for judgment on the pleadings, purportedly pursuant to Fed. R. Civ. P. 12(c) (styled as "Motion for Judgment of Dismissal"). (Dkt. No. 14). For the reasons stated below, the Court should deny the motion.

## INTRODUCTION

Plaintiffs filed a complaint alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA"). Plaintiffs alleged that ACA mailed Plaintiffs and a class of similarly situated individuals a series of debt collection letters that would confuse or mislead the unsophisticated consumer as to their rights to dispute the alleged debt referenced in ACA's letters. Specifically, ACA mailed each Plaintiff an initial collection letter that informed the consumer that ACA would assume the debt was valid unless the consumer disputed it within thirty days after receiving that letter. ACA then mailed each plaintiff a follow-up collection

1

letter, which again informed the consumer that ACA would assume the debt was valid unless the consumer disputed it within thirty days after receiving that second letter. Alliance sent these follow-up letters fewer than 30 days after it mailed its initial letters.

ACA's follow-up letters impermissibly deceive and confuse the consumer. The validation notice informs the consumer that she has 30 days to dispute the debt, and that the debt collector will provide verification if she disputes it in writing during the thirty-day period. If she disputes it during the thirty-day period, the debt collector cannot assume the debt is valid. If she disputes it in writing during the thirty-day period, the debt collector must cease collection until it provides verification of the debt or a copy of a judgment. 15 U.S.C. § 1692g(b). If the consumer disputes the debt after the validation period has expired, however, the debt collector may continue to assume the debt is valid and need not relent in its collection efforts.[1] *Id.*

The FDCPA requires the debt collector to provide the disclosures required by 15 U.S.C. § 1692g clearly and effectively. ACA's letters contain contradictory validation notices that are inherently false, confusing and misleading, and a consumer who received a series of letters like the ones ACA mailed to Plaintiffs would have no way of knowing when the validation period actually ended: thirty days after she received the initial notice or thirty days after she received the second validation notice. By statute, the validation period runs from the date the consumer receives an initial collection letter containing the validation notice. 15 U.S.C. § 1692g(b). When the consumer received ACA's follow-up letter, she would have fewer than thirty days to trigger her *statutory* dispute rights, which include a temporary (and sometimes permanent) cessation of

---

[1] Notably, consumers do retain some rights after the thirty-day period. For example, even though the debt collector is not required to cease collection or provide verification when a debt is disputed after the validation period has run, it still must include the dispute in the consumer's credit report.15 U.S.C. § 1692e(8);*Evans v. Portfolio Recovery Assocs., L.L.C.*, 2018 U.S. App. LEXIS 11372 (7th Cir. 2018).

collection activities.  Thus, a statement in a follow-up letter, sent days or weeks later, that informs the consumer that she still has thirty days to dispute the debt, creates the risk that the consumer will inaccurately believe the dates in the follow-up letter rather than the initial letter and dispute the debt *after* the statutory validation period has expired.

ACA argues that it would provide verification upon the consumer's request in or outside the thirty-day period, but this argument is a red herring.  ACA is required to effectively inform the consumer that she can *require* ACA to provide verification or cease collection by disputing the debt within the thirty-day period.  Whether ACA would provide verification regardless of when the consumer disputed the debt is beside the point.  A debt collector that is not required to comply with § 1692g(b) is not required to cease collection while verification is pending, and may provide verification that would be inadequate under § 1692g(b).  Moreover, other collection agencies may use identical form letters but process disputes differently.  ACA's *own brief* shows that ACA does not believe that mailing a second validation notice during the validation period actually gives the consumer an additional thirty days to dispute the debt.  As a matter of law, the debt collector must clearly state the validation period.  Because ACA's letters are inherently contradictory and "misrepresent or cloud" the length of the validation period, its motion for judgment on the pleadings must be denied.  *See Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2005).

## FACTUAL BACKGROUND

Each plaintiff is an individual who resides in the Eastern District of Wisconsin.  (Dkt. No. 1 at ¶¶ 3-5)  Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), and a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that ACA attempted to collect

3

from her a debt incurred for personal, family, or household purposes, namely medical services. (Dkt. No. 1 at ¶¶6-7)  ACA is a collection agency who mailed a series of debt collection letters to each plaintiff regarding alleged medical debts owed to various entities associated with Aurora Health Care services (collectively "Aurora").  (Dkt. No. 1 at ¶¶8-11, 12, 35, 62)

ACA mailed each plaintiff an initial debt collection letter, attempting to collect one or more alleged debts owed to Aurora, and containing a "validation notice" that informed her that she had thirty days to dispute the alleged debt referenced in that letter.  (Dkt. No. 1 at ¶¶ 17-18, 40-41, 67-68)  Fewer than thirty days after mailing the first collection letter, ACA mailed each plaintiff a second letter, which attempted to collect the same debts described in the initial letter, and reiterated the same validation notice.  (Dkt. No. 1 at ¶¶ 20-26, 43-49, 70-77)  The follow-up letters ACA mailed to Plaintiffs Bonin and Ozier also attempted to collect additional alleged debts not stated in the initial collection letter.  (*Compare* Dkt. No. 1, <u>Exhibit C</u> *with* Dkt. No. 1, <u>Exhibit D</u>; *Compare* Dkt. No. 1, <u>Exhibit E</u> *with* Dkt. No. 1, <u>Exhibit F</u>)  Each letter ACA mailed used a substantially identical validation notice closely tracking 15 U.S.C. § 1692g(a):

> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid.If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

(Dkt. No. 1, <u>Exhibits A-F</u>).

Each plaintiff was confused by ACA's letters and confused about when ACA would assume her debts were valid.  (Dkt. No. 1, ¶¶ 33-34, 60-61, 88-89)  Plaintiffs filed this Complaint on November 20, 2017.  (Dkt. No. 1)  ACA filed its Answer on February 1, 2018. (Dkt. No. 7)  ACA filed a "Motion for Judgment of Dismissal" on May 2, 2018.  (Dkt. No. 14).

4

## ARGUMENT

## I. LEGAL STANDARDS

### A. Standard on a Motion for Judgment on the Pleadings

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In considering a motion for judgment on the pleadings, a district court "view[s] all of the facts in a light most favorable to the non-moving party," and the court may grant the motion only if "it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." *United States v. Wood*, 925 F.2d 1580, 1581-1582 (7th Cir. 1991) (internal citation omitted). "The district court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true." *Id*. (citing *Flora v. Home Federal Savings and Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982). For the purposes of a motion under Rule 12(c), "[t]he pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).

Whether ACA calls its motion a "Motion for Judgment of Dismissal," a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), or a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), the standards are the same. "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). On a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all permissible inferences in favor of the plaintiff.

5

*Id.* at 728; *see also, Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but must only exhibit "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "'Plausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

"A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *3 (E.D. Wis. Sept. 29, 2017) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)). "Requests for relief as to part of a claim are a matter for summary judgment." *Id.* (citing Fed. R. Civ. P. 56(a)).

## B.    FDCPA Standards

"The FDCPA was enacted in part 'to eliminate abusive debt collection practices by debt collectors' . . . regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*,109 F.3d338 (7th Cir. 1997) (quoting 15 U.S.C. § 1692(e)). The FDCPA broadly prohibits unfair or unconscionable collection methods; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692e, 1692f, and 1692g. The FDCPA is a strict liability statute, and plaintiffs in FDCPA cases do not need to allege or prove intent, bad faith, or negligence.

6

*Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); *Ross v. MRS Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007). Instead, the Seventh Circuit strictly applies the FDCPA's "'comprehensive and reticulated statutory scheme, involving clear definitions, precise requirements, and particularized remedies[.]" *Evans*, 2018 U.S. App. LEXIS 11372, at *14; *see, e.g., Janetos*, 825 F.3d at 324 ("Congress decided that the failure to make the disclosure [of the name of the creditor] is a failure the Act is meant to penalize."); *Jang*, 122 F.3d 480, 484 (7th Cir. 1997) ("it is for Congress, and not the courts, to close this alleged loophole in the FDCPA."). The FDCPA provides "particularized remedies," and courts cannot rewrite the statute to authorize remedies other than those specified in 15 U.S.C. § 1692k. *E.g., Bishop v. Ross*, ("The court will not judicially fashion a 'waiver remedy' for violations of § 1692g when the FDCPA identifies civil liability as the remedy for noncompliance."); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) ("all private actions under the Fair Debt Collection Practices Act are for damages.").

Whether conduct violates the FDCPA is judged from the standpoint of a hypothetical "unsophisticated consumer." *Avila,* 84 F.3d at 227; *Gammon v. GC Services, LP*, 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is objective; whether the plaintiff or any class members were actually misled is not an element of a cause of action because the FDCPA prohibits debt collectors from making false, deceptive, or confusing statements, and the freedom from material misrepresentations is a legally protected interest that confers standing whether the plaintiff was personally deceived or not. *Bartlett*, 128 F.3d at 499; *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, at *6-9 (E.D. Wis. June 12, 2017). The hypothetical unsophisticated consumer reads collection letters literally but does not read them

7

idiosyncratically, and the critical question in evaluating whether a collection letter violates the FDCPA is if the letter may similarly confuse or mislead "a significant fraction of the population[.]" *Durkin*, 406 F.3d at 414 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

The Seventh Circuit treats claims that a debt collection letter is false, deceptive, misleading, or confusing as a question of fact, that if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion. *Evory*, 505 F.3d at 775-76 (7th Cir. 2007); *see also Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 628 (7th Cir. 2009) ("[D]ismissal is only appropriate in 'cases involving statements that plainly, on their face, are not misleading or deceptive.'"); *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812, 814-15 (7th Cir. 2016)). Whether a collection letter is misleading or confusing requires a "fact-bound determination of how an unsophisticated consumer would perceive the statement[.]" *Boucher*, 880 F.3d at 367; *see also McMillan*, 455 F.3d at 760; *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999).

The standard for finding that a debt collection letter complies with the FDCPA as a matter of law at the pleading stage is an extremely heavy burden for a defendant to meet. *McMillan*, 455 F.3d at 759. This Court need not decide whether ACA's letters are actually misleading or confusing on their face; it need only consider whether the letter is "patently not misleading and would not mislead any reasonable consumer, even an unsophisticated one[.]" *Johnson v. Enhanced Recovery Co., LLC*, 228 F. Supp. 3d 870, 875 (N.D. Ind. Jan. 17, 2017).

8

**II.    MAILING A CONSUMER A SECOND VALIDATION NOTICE DURING THE VALIDATION PERIOD IS CONFUSING AND MISLEADING AS A MATTER OF LAW BECAUSE IT CONTRADICTS AND OVERSHADOWS THE DISCLOSURE THAT THE CONSUMER HAS THIRTY DAYS TO NOTIFY THE DEBT COLLECTOR THAT THE DEBT IS DISPUTED.**

ACA's letters violate the FDCPA as a matter of law. "To satisfy § 1692g(a), the debt collector's notice must state the required information 'clearly enough that the recipient is likely to understand it.'" *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) (quoting *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004)). The consumer, reading ACA's letters alongside each other would undoubtedly be left "scratching his head" trying to figure out when the statutory validation period would end. *See Avila*, 84 F.3d at 226. Because a debt collector cannot mislead or confuse the consumer about her validation rights during the validation period, ACA's conduct violates the FDCPA.

**A.    The debt collector must disclose the consumer's statutory rights in a straightforward manner, and confusing disclosures violate the FDCPA.**

Congress created the statutory debt validation process because of the "recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). The straightforward statutory validation process was adopted in 15 U.S.C. § 1692g:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

9

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

. . .

"[T]he FDCPA does not assume that the recipient of a collection letter is aware of her right to require verification of the debt." *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 90 (2d Cir. 2008). Hence, Congress bifurcated the validation statutes: § 1692g(a) requires the debt collector to arm the consumer with the information she needs to effectively dispute the debt, and § 1692g(b) specifies the consumer's substantive validation rights. Notably, § 1692g(a) *does not*

10

confer any substantive right to obtain verification of the debt or require the debt collector cease collection.  *See, e.g., Jang*, 122 F.3d at 483.[2]  Instead, § 1692g(a) simply requires the debt collector provide the consumer with the information that allows her to know whether, when, and how to communicate her dispute.  *Jang*, 122 F.3d at 483.  If she disputes it, the debt collector must report the debt as disputed, *see* 15 U.S.C. § 1692e(8), and if she disputes it in writing within the thirty-day period, the debt collector must cease collection until it provides verification. 15 U.S.C. § 1692g(b).

**B.      The validation notice does not create any statutory rights.**

The debt collector does not actually create any statutory rights for the consumer when it provides the validation notice; it simply informs the consumer that she has thirty days to dispute the debt and that, if she does so in writing, the debt collector will provide verification.  For example, in, *DiRosa v. North Shore Agency, Inc.*, 56 F. Supp. 2d 1039, 1040 (N.D. Ill. July 15, 1999), the debt collector mailed a second validation notice after the validation period ended.  The consumer sued the debt collector, alleging that the follow-up validation notice confused and misled her about her federal rights.  The court dismissed the claim, holding that the notice "did not say or suggest that the consumer had federal rights, or that the debt collector would forego a

---

[2] The "informational" rights created by § 1692g(a) are still unquestionably "substantive" for the purpose of conferring Article III standing.  *E.g., Janetos v. Fulton Friedman & Gullace*, 2016 U.S. Dist. LEXIS 189250, at *5-6 (N.D. Ill. Sept. 21, 2016); *see also, Byrne v. Or. One, Inc.*, 2017 U.S. Dist. LEXIS 132538, at *9-10 (D. Or. July 18, 2017) (collecting cases and concluding that "the overwhelming majority of district courts to address standing in FDCPA cases have also rejected defendants' post-*Spokeo* standing challenges.").  15 U.S.C. § 1692g(b) also creates a substantive informational right to freedom from communication that overshadows or conflicts with the disclosure of her dispute rights.

In fact, because Congress expressly requires debt collectors to arm consumers with this information---including the length of the validation period---the failure to provide it not only confers standing, but is *per se* material.  *Janetos*, 825 F.3d at 324 ("we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough.").

demand for prompt payment or withhold advising credit reporting agencies of the purported delinquencies if the consumer sought verification after the 30-day period, ***nor was it required to do so***." (emphasis added). *Id.* Although the debt collector must cease collection pending verification if the consumer disputes the debt in writing during the thirty-day period triggered by the initial validation notice, *Jang*, 122 F.3d at 483, "[t]hat constraint upon the debt collector is not . . . included in the validation notice." *DiRosa*, 56 F. Supp. 2d at 1040.

The consumer has just thirty days after she receives the validation notice to submit a written dispute, and trigger the requirement that the debt collector cease collection activities pending verification. 15 U.S.C. § 1692g(b). "Under section 1692g(b) a consumer must dispute a debt *in writing,* within **an initial thirty-day period**, in order to trigger a debt validation process." *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) (emphasis in bold added, emphasis in italics in original). The Seventh Circuit recently adopted the same approach that the First Circuit adopted in *Brady*:

> Section 1692g(b) "confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Brady*, 160 F.3d at 67. . . . If the meaning of "disputed debt" as used in § 1692g(b) carried over to § 1692e(8), then, in order to trigger the limited protection of § 1692e(8), a consumer would be required to submit written notice to a debt collector ***within the initial thirty-day period***.

*Evans*, 2018 U.S. App. LEXIS 11372, at *16-17 (emphasis added) (quoting *Brady*).

Hence, the debt collector provides the validation notice for two reasons. First, the validation notice serves an informational purpose, arming the consumer with the information she needs to determine whether and how she should register a dispute. 15 U.S.C. § 1692g(a); *see Jacobson*, 516 F.3d at 95. Second, the validation notice serves a substantive purpose *for the debt*

12

*collector*. It initiates the "thirty-day period" after which the debt collector is not required to provide verification of the debt upon the consumer's written dispute.

Once the consumer receives the validation notice---irrespective of when the "initial communication" actually occurred---the thirty-day clock begins ticking. 15 U.S.C. § 1692g(b); *see also, Vayngurt v. Sw. Credit Sys., L.P.*, 2016 U.S. Dist. LEXIS 142680, at *13 (E.D.N.Y. Oct. 14, 2016) ("if the plaintiff waits more than thirty days to attend to the matter, she loses many of her rights under the FDCPA.") (quoting *Harry v. Pentagroup Fin., LLC*, 2007 U.S. Dist. LEXIS 17821, at *11 (E.D.N.Y. Mar. 14, 2007)). If the consumer disputes the debt in writing within the thirty-day period, she triggers the statutory protections under § 1692g(b), and the debt collector must cease collection. 15 U.S.C. § 1692g(b). If she does not, she forfeits her statutory right "to demand the cessation of all collection activities." *Evans*, 2018 U.S. App. LEXIS 11372, at *16 (quoting *Brady*, 160 F.3d at 67). Absolutely nothing in 15 U.S.C. § 1692g or the FDCPA as a whole requires or even allows a debt collector to extend the validation period or "restart the clock." Even if the debt collector mails a second validation notice, it does not trigger a new "thirty-day period" because the consumer must communicate her dispute within thirty days after receiving the validation notice triggered by the "initial communication." *Evans*, 2018 U.S. App. LEXIS 11372, at *16 ("Under its ordinary meaning, 'there can only be *one* "initial communication" between a debt collector and a consumer, and any communication that follows the "initial communication" is necessarily *not* an "initial" communication.'"); *Dorsey v. Schumacher*, 2015 U.S. Dist. LEXIS 16580, at *7 (D. Or. Feb. 11, 2015) (quoting *Derisme v. Hunt Leibert Jacobson, PC*, 2010 U.S. Dist. LEXIS 119351, 2010 WL 4683916, at *5 (D. Conn. Nov. 10, 2010) (emphasis in original).

13

The debt collector may, of course, ***choose*** to validate a debt even if the consumer does not trigger her rights under § 1692g(b), but doing so does not absolve the debt collector of liability for misinforming the consumer as to when the statutory protections cease. *See McCabe*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 9, 2003). As long as the debt collector is not required to provide verification, it cannot be liable under § 1692g(b) for providing inadequate verification or continuing to collect the debt while verification is pending. *Id.*; *see, Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt collector was liable under § 1692g(b) for continuing to collect after providing inadequate verification). The "ultimate power" conferred by § 1692g(b) is not simply triggering verification, it is requiring the debt collector to cease collecting pending verification. *Evans*, 2018 U.S. App. LEXIS 11372, at *16; *Brady*, 160 F.3d at 67; *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013). A debt collector voluntarily validating the debt could indefinitely continue or even ramp up its collection efforts while it was "preparing" verification in the hopes that the consumer would pay the debt in the meantime. *See, e.g., Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, at *6-9 (D. Haw. Aug. 16, 1990); *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) (explaining that, "[i]n *Bailey*, the court held that, when a consumer first paid the debt and then *timely requested verification* of the debt, the debt collector violated the FDCPA by failing to provide such verification and keeping the consumer's payment.") (emphasis added).

To ensure the consumer does not inadvertently forfeit this "ultimate power," the FDCPA requires that debt collectors disclose the information the consumer needs---the amount of the debt, the name of the creditor to whom the debt is owed, and the consumers' rights to dispute the

debt---in a non-confusing manner.  *E.g., Chuway*, 362 F.3d at 949 (amount of the debt must be

clear); *Janetos*, 825 F.3d at 323 (name of the creditor must be clear); *Bartlett*, 128 F.3d at 500-01

(effect of disputing the debt must be clear); *Chauncey*, 118 F.3d at 519 (length of the validation

period must be clear).  Following the Seventh Circuit and courts throughout the country,

Congress amended the FDCPA to expressly prohibit communication that overshadows, conflicts

with, or confuses the disclosure of the consumer's dispute rights.  15 U.S.C. § 1692g(b);

*Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 n.1 (7th Cir. 2012).

A follow-up collection letter that falsely states the amount of time remaining in the

validation period violates § 1692g(b).  Whether a follow-up collection letter overshadows or

contradicts the validation notice provided in the initial collection letter is a question of fact.  The

Seventh Circuit clarified how follow-up collection letters may confuse the consumer about her

validation rights in *Durkin*, 406 F.3d at 417:

> [T]he plaintiffs point out that a "debt collector may not overshadow or contradict
> [the validation notice] with other messages sent . . . within the validation period."
> To avoid such overshadowing or contradiction, the plaintiffs argue that Equifax
> should have reiterated or referred to the validation notice in its follow-up
> collection letters.  However, there is no need for such a blanket rule.  While some
> follow-up letters may certainly go over the line, in general, not every follow-up
> letter demanding payment during the validation period overshadows or
> contradicts a validation notice; thus, **not every follow-up letter sent during the**
> **validation period must automatically reiterate the safe-harbor validation**
> **notice, refer back to that notice, or remind debtors about the validation**
> **period and the time remaining in that period**.  Therefore, the mere absence of
> any such reiterations and reminders in the follow-up collection letters does not
> alone generate an unacceptable level of confusion so as to warrant summary
> judgment for the plaintiffs.  Rather the matter turns on whether the specific text
> contains any impermissible overshadowing or contradiction with respect to the
> validation notice.
>
> [T]he specific text in the follow-up letters at issue, contrary to the plaintiffs'
> assertions, does not "clearly" overshadow or contradict the validation notice from

15

the initial letter so as to entitle the plaintiffs to summary judgment. **For instance, these letters do not indicate that the time for disputing the debt has passed. Nor do they misrepresent or cloud the amount of time remaining to dispute the debt.**

*Id.* at 417 (citations omitted) (emphasis added).

Notably, *Durkin* instructs district courts a debt collector need not "reiterate the safe-harbor validation notice, refer back to that notice, or remind debtors about the validation period and the time remaining in that period." *Id.* at 417. *Durkin* further instructs district courts that a follow-up letter violates the FDCPA if it contains statements that "misrepresent or cloud the amount of time remaining" in the validation period. *Id.* at 417. As a result, a debt collector who chooses to "reiterate the safe-harbor validation notice . . . and the time remaining in that period[,]" must do so in a way that does not "misrepresent or cloud the amount of time remaining" in the validation period. *Id.* at 417. Basically, if the unsophisticated consumer looking at a follow-up letter alongside the initial collection letter would be confused or misled about how much time she still has to dispute the debt, the debt collector violates the FDCPA.

The FDCPA forbids debt collectors from overstating the length of the validation period as well as understating it. *Durkin*, 406 F.3d at 417 (a collection letter overshadows the validation notice if it "misrepresent[s] or cloud[s] the amount of time remaining to dispute the debt."). District courts apply *Durkin* consistently with this approach, noting that a representation may "misrepresent or cloud" the validation period by overstating it. *Durkin*, 406 F.3d at 417. For example, *Day v. Etan Gen., Inc.*, 2012 U.S. Dist. LEXIS 44354 (N.D. Ill. Mar. 30, 2012), concerned a series of letters where the

16

first letter contained a validation notice, and the second letter --- mailed about 18 days

later --- informed the consumer that "the thirty (30) day validation period discussed in our

first letter concerning the validity of your debt will pass within the next three (3) weeks."

*Id.* at 5.  The district court granted summary judgment to the defendant because "[e]ven an

unsophisticated debtor can be expected to understand that the use of the word 'within'

does not indicate that the validation period expires on a date certain at the end of the third

week." *Id.*, at \*19.   But the plaintiff stated a claim that the debt collector overstated the

amount of time remaining in the validation period.   If he had "present[ed] some evidence

demonstrating that the letter would actually confuse or mislead consumers[,]" there

would have been a genuine issue for trial.  *Id.*

> C.   **The validation period is statutory, and the debt collector may assume the debt is valid as long as the consumer does not dispute the debt within thirty days after receiving the initial validation notice, notwithstanding whether the debt collector provides a subsequent validation notice.**

As discussed above, the validation notice is meant to *inform* consumers how to dispute

the debt, but it does not *create* the substantive rights described in 15 U.S.C. § 1692g(b).  *DiRosa*,

56 F. Supp. 2d at 1040.  Numerous courts throughout the country have adopted the same

reasoning as in *DiRosa*, holding that a validation notice mailed after the thirty-day period has

expired does not create a new validation period.  *E.g., Paige v. Waukesha Health Sys.*, 2013 U.S.

Dist. LEXIS 96962, at \*22-25 (E.D. Wis. July 11, 2013).  Whether mailing a second validation

notice created another validation period was recently analyzed in detail by the Eastern District of

New York, which held that it does not:

> The thirty-day validation period under § 1692g, though running from the date that the
> debt collector provides the debtor with notice of its validation rights, is created by statute,

Case 2:17-cv-01610-NJ   Filed 05/14/18   Page 17 of 30   Document 16

not by the notice itself.  Delmoral cites no authority for the proposition that a new thirty-day validation period can be created by a communication from a debt collector, much less for the proposition that any such period, although not contemplated by the statute, would nonetheless otherwise be strictly subject to all of its provisions.  Furthermore, this proposed interpretation is in tension with the plain language of the statute itself, which appears to contemplate the creation of a single validation period.  *See* § 1692g(a) ("Within five days after *the initial* communication with a consumer . . . *the* notice . . . *the* thirty-day period . . . ."). Indeed, if a validation notice sent after the initial validation period could in fact create a new validation period, the subsequent validation notice would always violate § 1692g(a), as it would not have been sent within five days of the initial communication.  Finally, there is no reason to believe that multiple validation periods are necessary in order to give effect to the statute's purpose.  As explained by the Senate Report accompanying the enactment of the FDCPA, the purpose of § 1692g was to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," an objective which was satisfied when CPA properly provided Delmoral with a validation notice in the December 15 Letter.  *See* S. Rep. No. 95-382, at 4 (1977).

Thus, a validation notice sent after the initial thirty-day period contemplated by § 1692g --- regardless of what rights it might create between the debt collector and the consumer in contract, equity, or otherwise ---  does not establish a new statutory thirty-day period.

*Delmoral v. Credit Prot. Ass'n, LP*, 2015 U.S. Dist. LEXIS 133760, at *23-25 (E.D.N.Y. Sept. 30, 2015) (emphasis in original).

ACA's own briefing agrees that a debt collector does not actually create a new validation period when it mails the consumer a validation notice after the thirty-day period has closed. ACA urges this court to follow *Curry v. AR Res., Inc.*, 2016 U.S. Dist. LEXIS 154234 (D.N.J. Nov. 4, 2016), "and the nationally diverse cases it relies on." (Dkt. No. 15 at 13-14).  Like *Delmoral*, *DiRosa*, and *Paige*, *Curry* and most of the cases cited in ACA's briefing hold that a debt collector does not violate the FDCPA when it mails a collection letter with a validation notice after the validation period has closed.  (Dkt. No. 15 at 13) ("The second threshold principle is that sending a second validation notice after the 30-day period of the first notice cannot overshadow the first notice, because the first period has ended.").  For the purposes of

18

this motion, it is undisputed that mailing a validation notice outside the thirty-day period does not create a new validation period.

Nonetheless, ACA cites several cases holding that mailing a second validation notice *during* the validation period does not violate the FDCPA because, when the debt collector does this, it simply creates a new validation period, or extends the existing validation period. (Dkt No. 15 at 13-17).[3] These cases were wrongly decided, and this Court should not follow them. As discussed above, 15 U.S.C. § 1692g(b) establishes a set, thirty-day validation period, beginning when the consumer receives the written validation notice, and nothing in the statute provides for an extension or re-start of the validation period. Further, none of the cases ACA references explains why mailing a second validation notice *during* the validation period would create a new validation period when mailing one after the validation period would not. Instead, these courts rewrite the FDCPA and authorize consumers to pursue the equitable remedy that the second validation notice restarts the validation period instead of the exclusive civil damages remedy that the FDCPA *actually* provides. *Crawford*, 201 F.3d at 882; *Bishop*, 817 F.3d at 1273-74. The validation notice does not inform the consumer that the debt collector will cease collection while it obtains verification, and there is no contractual or equitable basis for implying this condition after the initial validation period. 15 U.S.C. § 1692g(b). *See DiRosa*, 56 F. Supp. 2d at 1040.

Far from making clear that its follow-up notices actually extend the validation period, ACA's own briefing suggests its follow-up notices *do not* extend the validation period. (Dkt. No. 15 at 21 n.4). In discussing the letters mailed to Plaintiffs Bonin and Ozier, where the

---

[3]*Brenker v. Creditors Interchange, Inc.*, 2004 U.S. Dist. LEXIS 4825, at *3 (S.D.N.Y. Mar. 25, 2004); *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381, 1386-87 (S.D. Fla. Oct. 30, 2014); and *Bridges v. Performant Recovery*, 2015 U.S. Dist. LEXIS 166703, at *6-10 (M.D. Ga. Dec. 14, 2015).

19

follow-up letters referenced debts that were not stated in their initial collection letters, ACA notes that the consumers "would have been entitled to a full 30 days to dispute the 'new' debt contained in the second notices." (Dkt. No. 15 at 21 n.4). But ACA goes on to note that the second validation notice *probably does not* create a second validation period for any of the debts addressed in the initial collection letter: "Indeed, **an argument could be made** that the new *total* contained in the second letter was itself entitled to a new 30 day period to register a dispute." (Dkt. No. 15 at 21 n.4) (italics in original, bold added). The necessary corollary to this "argument [that] could be made" is its inverse---that "the new *total* contained in the second letter was [not] itself entitled to a new 30 day period to register a dispute." (Dkt. No. 15 at 21 n.4) (italics in original, alterations added). Moreover, assuming there is no "new *total*" in the follow-up letter (*e.g.,* the letters ACA mailed to Plaintiff Maloney), there would be no argument that the "*total* . . . was itself entitled to a new 30 day period." (Dkt. No. 15 at 21). ACA's arguments that it would voluntarily be bound by 15 U.S.C. § 1692g(b) simply do not wash because the validation period expires "by operation of law, not at defendant's election." *See Pantoja v. Portfolio Recovery Assocs., LLC*, 78 F. Supp. 3d 743, 746 (N.D. Ill. Jan. 14, 2015).[4]

> **D.** **Even if ACA's follow-up letter actually created a new thirty-day validation period, it would still violate the FDCPA because, in light of the initial letter, the consumer would not know that she still had thirty days to dispute the debt.**

Even if this court adopts the *Brenker* approach and holds that subsequent validation notices mailed during the validation period do, in fact, entitle the consumer to an additional thirty days to dispute the debt, the series of letters *still violates* the FDCPA. Assuming the second

---

[4] Indeed, one of the debt collector's arguments in the district court in *Pantoja*, was that the debt collector had a policy to not revive time-barred debts. *Pantoja*, 78 F. Supp. 3d at 746. The district court easily disposed of the debt collector's argument, calling it "pure sophistry." *Id.*

20

validation notice entitled the consumer to a "supplemental" thirty-day validation period, the length of that validation period would have to be communicated effectively, *i.e.,* "in a nonconfusing manner." *Bartlett*, 128 F.3d at 500. But, because the consumer had received a prior notice informing her that she had thirty days to dispute the debt, she would be left wondering when the thirty-day period actually began---and, consequently, when it would end. *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Penn. May 8, 1996) ("the least sophisticated would be confused as to the boundaries of the thirty day period if he receives copies of the letter on different days, as Mr. Adams did here.").[5]

"The aim of § 1692g is . . . to make the rights and obligations of a potentially hapless debtor as pellucid as possible. . . . we cannot adopt a construction of the Act that would . . . leave that debtor uncertain as to just when . . . she must, to be safe, send out a notice of dispute." *Jacobson*, 516 F.3d at 95. A debt collector violates the FDCPA if its validation notice leaves the unsophisticated consumer "uncertain as to her rights." *Muha*, 558 F.3d at 630 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). Thus, assuming the follow-up validation notice does create a new validation period, the confusion inherent in the contradictory representations would effectively shorten that validation period.

---

[5] Although § 1692g(b) prohibits collection methods that are inconsistent with the disclosure of the consumer's rights to dispute the debt during "the thirty-day period," allowing debt collectors to overshadow the consumer's dispute rights before providing the validation notice would defeat the purpose of the prohibition on overshadowing. *E.g., Bartlett*, 128 F.3d at 500 ("the unsophisticated consumer is to be protected against confusion, whatever form it takes.").

Thus, the "thirty-day" period may actually last longer than thirty days if the "initial communication" occurs before the debt collector actually mails the validation notice. For example, if the "initial communication" was actually a telephone call, and the consumer immediately responded to that call by emailing the debt collector with notice that the debt was disputed, the debt collector would undoubtedly be required to process the dispute even though the consumer disputed the debt before she actually received the validation notice. Likewise, an "initial communication" letter that stated the debt collector assumed the debt was valid or misstated the validation period would overshadow the forthcoming notice.

21

Even the courts that dismiss similar claims acknowledge that ACA's practice is inherently confusing, but hold the confusion is not material. *Brenker*, 2004 U.S. Dist. LEXIS 4825, at *7 ("**if anything**, it re-started the period . . . .") (bold added); *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381, 1386-87 (S.D. Fla. Oct. 30, 2014) ("**If anything**, the second letter grants Plaintiff *additional* time to do so.") (bold added, italics in original). ACA also *agrees* with *Brenker* and *Gesten* that the unsophisticated consumer would have no idea whether the second validation notice actually restarted the validation period or not. (Dkt. No. 15 at 2) ("**if anything**, the second notice serves to merely extend or renew the period").[6] This Court should not follow the reasoning in *Gesten* because it rewrites the statutory prohibition on overshadowing. *Compare Gesten*, 57 F. Supp. 3d at 1386 ("Defendant's second letter is not inconsistent with the thirty-day period that the FDCPA allows Plaintiff to dispute the debt.") *with* 15 U.S.C. § 1692g(b) "Any . . . communication during the 30-day period may not . . . be inconsistent with **the disclosure of the consumer's right to dispute the debt** . . . ."). *Gesten* and *Brenker* erroneously applied the prohibition on overshadowing communication, limiting that prohibition to communication that actually conflicts with the consumer's dispute rights rather than communication that conflicts with the *disclosure* of those rights. *Bartlett*, 128 F.3d at 500-01; *see also Brenker*, 2004 U.S. Dist. LEXIS 4825, at *9.

Since the validation period in ACA's initial letters contradicts the validation period in ACA's follow-up letters, ACA's follow-up letters did not effectively disclose the validation period. The debt collector may not mail the consumer a single letter that includes contradictory

---

[6] These "if anything" qualifiers demonstrate that the district courts, and ACA, are themselves unsure whether the debt collector would actually be bound by § 1692g(b) if the consumer disputed the debt more than thirty days after she received her the initial collection letter but fewer than thirty days after she received the follow-up notice.

statements about how long the consumer has to dispute her debt, nor may the debt collector tell the consumer in an initial telephone communication that she must dispute the debt within thirty days from that conversation, and follow up that conversation by mailing a validation notice that says she has thirty days from receipt of the letter. Thus, the debt collector cannot make these same contradictory statements in separate letters. *Durkin*, 406 F.3d at 417.

Even assuming there is no *actual* contradiction because the second validation notice would create an entirely new validation period, "[*a*]*pparent* contradictions of validation notices are . . . thought to evidence per se 'confusingness[.]'" *Francisco v. Doctors &Merchants Credit Serv.*, 1998 U.S. Dist. LEXIS 12234, at *20 (N.D. Ill. July 29, 1998). It does not matter whether mailing a second validation notice *actually* extends the time for the consumer to respond. Even if it does, the consumer would still be "uncertain as to just when . . . she must, to be safe, send out a notice of dispute.." *Jacobson*, 516 F.3d at 95; *see also Muha*, 558 F.3d at 630.

The confusion is plain. ACA's initial letter says that ACA will assume the debt is valid "[u]nless you notify this office within thirty days after receiving this notice" that you dispute the debt. ACA's follow-up letter, mailed several days later, also informs the consumer that ACA will assume the debt is valid "[u]nless you notify this office within thirty days after receiving this notice" that you dispute the debt." (Dkt. No. 1, ¶¶ 18, 24, 41, 47, 68, 74). The confusion inherent in the contradictory deadlines necessarily violates the FDCPA. *Durkin*, 406 F.3d at 417; *Pantoja,* 852 F.3d at 687.

The series of letters is patently confusing. But, according to ACA, it should not be liable for this confusion because "*Zemeckis* differentiates between 'puffery' (i.e., "act now," provisions) and a truly harmful overshadowing of a debtor's rights: one that involves additional

financial penalties if the debtor does not act in a time period *shorter* than the 30-day period required by § 1692g." (Dkt. No. 15 at 12) (citing *Zemeckis*, 679 F.3d at 636). ACA grossly mischaracterizes how *Zemeckis* defines puffery. Puffery is "rhetoric designed to create a mood ***rather than to convey concrete information or misinformation***." *Zemeckis*, 679 F.3d at 636 (quoting *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574-75 (7th Cir. 2004) (emphasis added). "In analyzing whether a letter, on its face, contravenes Section 1692g(b), this Court has distinguished between language rushing the debtor to take action---to "act now"---and provisions that set deadlines contrary or contradictory to the thirty-day validation period." *Zemeckis*, 679 F.3d 636; *see also, Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *6 (E.D. Wis. Apr. 26, 2018). The contradictory deadlines in ACA's validation notices are not rhetorical, and ACA's argument that these deadlines somehow constitute puffery is nonsense. If the actual deadline is in the first letter, the second letter is confusing and misleading. If the actual deadline is the one stated in the second letter, its first letter is confusing and misleading.

### E. ACA's arguments do not justify dismissal.

ACA's series of letters is inherently confusing about when the validation period ends. The consumer would not know whether ACA would assume the debt was valid 30 days after she received the initial letter, or 30 days after she received the follow-up letter. ACA's arguments for dismissal can be boiled down to three main points, all of which should be rejected:

> (1) the consumer received adequate notice of the initial validation period, and then received adequate notice of a second thirty-day validation period that began with the follow-up letter;

24

(2) a debt collector does not violate the FDCPA by confusing the consumer into about the length of the validation period, unless it confuses the consumer into believing the validation period is less than thirty days from receipt of the letter; and

(3) any confusion or misleading effect was not material because ACA processes consumers' disputes even if those disputes are received after the thirty-day period.

First, ACA's own briefing admits that arguments could be made either way as to whether the follow-up letter actually created a new validation period. ACA's concession means that the collection letter does not effectively convey the required information. *Janetos*, 825 F.3d at 323 ("A lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear requirements of § 1692g(a)[] demands more."). The contradictory deadlines would necessarily confuse a signification fraction of the population. *Chuway*, 362 F.3d at 948.

Responding to ACA's second and third points, ACA simply misstates the law. Nothing in *Zemeckis* or any other Seventh Circuit decision says a debt collector may overstate the validation period. 15 U.S.C. § 1692g(a) requires that debt collectors convey the required information clearly and effectively, and the failure to do so is *per se* material. *Janetos*, 825 F.3d at 324. Moreover, leaving the consumer uncertain as to when the validation period will end is, in fact, material, whether or not ACA would processes disputes received after the validation period has run.[7]

---

[7] ACA maintains that it is not plausible that a debt collector would not validate the debt. (Dkt. No. 15 at 15-16 n.3) ACA's contention calls into question why Congress adopted 15 U.S.C. § 1692g in the first place. In fact, there is a litany of cases where debt collectors did not process a dispute that was

25

Although a debt collector's individual dispute processing policies are relevant to damages, they are not relevant to liability. *Janetos*, 825 F.3d at 325; *see also, e.g., Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Bishop*, 817 F.3d at 1274 n.4. The FDCPA specifies a civil remedy that provides for statutory damages if the violation results in a *risk of harm*, whether or not the consumer suffers *any* actual harm. *Evans*, 2018 U.S. App. LEXIS 11372, at *11-12; *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *Bartlett*, 128 F.3d at 499. District Courts are not at liberty to rewrite the statute and fashion a waiver remedy where "Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize." *Janetos*, 825 F.3d at 324; *Bishop*, 817 F.3d at 1274.

A debt collector may honor disputes that were communicated after the validation period has run, but it cannot misstate the law as to how and when the consumer may *require* it to respond. *McCabe.*, 272 F. Supp. 2d at 743-44. The decisions ACA cites erroneously distinguish *McCabe*, *Nero*, and numerous similar decisions that correctly conclude that a debt collector cannot provide a deficient validation notice simply because it offers to provide verification of the debt upon oral dispute. *E.g., Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1273-74 (11th Cir. 2016) ("We reject the notion that § 1692g gives debt collectors discretion to omit the 'in

---

communicated orally or outside the thirty-day period. *E.g., Evans*, 2018 U.S. App. LEXIS 11372; *Milton v. LTD Fin. Servs.*, 2011 U.S. Dist. LEXIS 7426, at *13-14 (S.D. Ga. Jan. 25, 2011) (genuine issue of material fact about whether letter was mailed before the validation period closed); *Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841 (E.D. Mich. May 30, 2008) (debt collector not required to provide verification where validation notice was mailed to consumer on October 18, 2006 and consumer mailed written dispute on November 28, 2006); *Sayles v. Advanced Recovery Sys.*, 865 F.3d 246, 248 (5th Cir. 2017) (debt collector did not process dispute faxed after validation period had closed); *Daniel v. W. Asset Mgmt.*, 2011 U.S. Dist. LEXIS 124788, (E.D. Mich. Oct. 28, 2011) (oral notification); *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999); *Jones v. Dominion Law Assocs.*, 2011 U.S. Dist. LEXIS 129518 (E.D. Va. Nov. 8, 2011) (request for validation fell outside of the statutory period); *Pakhutko v. Blitt & Gaines, P.C.*, 2014 U.S. Dist. LEXIS 60438, at *3-4 (N.D. Ill. May 1, 2014) (validation notice received on June 23, 2013 but dispute was not mailed until August 19, 2013).

writing' requirement or cure improper notice by claiming waiver. The statute is clear. The debt collector 'shall' notify the consumer of her right to dispute the debt in writing. . . .The court will not judicially fashion a 'waiver remedy' for violations of § 1692g when the FDCPA identifies civil liability as the remedy for noncompliance.") (emphasis added); *see also, Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing.").

Instead, the courts following *Brenker* rewrite the FDCPA, and engage in confusing and contradictory reasoning. For example, *Brenker* held that, because "Plaintiff had properly been informed of that required validation period, a question as to whether Defendant had extended further that period is not one that would have vitiated the validity of the original notice." 2004 U.S. Dist. LEXIS 4825, at *9. But the Seventh Circuit expressly forbids debt collectors from sending follow-up notices that confuse the initial validation notice, which is why a debt collector violates the FDCPA if its follow-up collection letters assume the debt is valid or direct consumers to communicate disputes by phone. *See, e.g., Trull v. GC Servs. Ltd. Pshp.*, 961 F. Supp. 1199, 1205 (N.D. Ill. Mar. 24, 1997); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87, 91-92 (3d Cir. 2017) (discussing *Durkin*, 406 F.3d at 417); *Flowers v. Accelerated Bureau of Collectors, Inc.*, 1997 U.S. Dist. LEXIS 3354, at *19-20 (N.D. Ill. Mar. 13, 1997), *modified on reconsideration*, 1997 U.S. Dist. LEXIS 6070 (N.D. Ill. Apr. 29, 1997) (because second collection notice demanding that consumer telephone or write "implies that Ms. Flowers could dispute her debt by telephone, it contradicts the validation notice."). As the

27

Eleventh Circuit discussed in *Bishop*, a debt collector cannot cure a defect in its validation notice by simply waving the requirement that a consumer dispute the debt in accordance with 15 U.S.C. § 1692g.  *Bishop*, 817 F.3d at 1274 ("Congress decided that **the failure to make the disclosure is a failure the Act is meant to penalize.**"); *Janetos*, 825 F.3d at 324 (emphasis added).

There is simply no practical difference between misstating the validation period and misstating whether a dispute must be communicated in writing.  *Bartlett*, 128 F.3d at 500 ("It would be better if the courts just said that the unsophisticated consumer is to be protected against confusion, **whatever form it takes**.") (emphasis added).  A follow-up letter that states a new expiration date for the validation period clearly "misrepresent[s] or cloud[s] the amount of time remaining to dispute the debt," and overshadows the validation notice.  *Durkin*, 406 F.3d 417. At least two courts dismissing complaints premised on subsequent validation notices mailed outside the validation period indicated in dicta that sending a second validation notice *during* the validation period would impermissibly overshadow the initial notice.  *Paige*, 2013 U.S. Dist. LEXIS 96962, at *23-24 n.3; *Delmoral*, 2015 U.S. Dist. LEXIS 133760, at *16 ("A consumer who received the Second Letter within the initial validation period may also have a plausible cause of action under § 1692g based on the overshadowing of the initial validation notice . . . .").

The unsophisticated consumer, presented with contradictory deadlines for disputing the debt would undoubtedly be left scratching her head, wondering which deadline was the right one. *See, e.g., Adams*, 926 F. Supp. at 528.  She would potentially forego her statutory rights to dispute the debt, or feel pressed to make her decision before she was statutorily required to do so. Just as ACA cannot mail a consumer a single letter that contradictorily states the validation period is both 30 days and 35 days, it cannot mail separate letters that convey that message.

28

**F.      ACA's WCA liability is contingent on its FDCPA liability.**

ACA's motion to dismiss argues that Plaintiffs' WCA claims fail as well because "there are no facts to support that the letters threatened or harassed the Plaintiffs . . . by engaging in conduct which could reasonably be expected to harass plaintiffs." (Dkt. No. 15 at 24-25) Contrary to ACA's conclusory contentions, conduct that confuses consumers into foregoing important statutory rights can reasonably be expected to harass Wisconsin consumers. *See, e.g., Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008).

That ACA holds a special status as a licensed Collection Agency makes its conduct especially problematic. (Dkt. No. 1, ¶ 10); Wis. Admin. Code § DFI-Bkg. 74.16(9) (prohibiting licensed Collection Agencies from engaging in "conduct which violates the Federal Fair Debt Collection Practices Act); *see, Al*, 2018 U.S. Dist. LEXIS 70321, at *5 ("Plaintiff alleges that because Defendant is a Wisconsin-licensed collection agency, its FDCPA-violative conduct also gives rise to WCA liability."), at *10 n.2 ("Because the FDCPA claims survive the motion to dismiss, the WCA claim does as well.").  It is no surprise that the DFI would hold licensed collection agencies to this standard because they substantially benefit from the enhanced legitimacy that inheres in being vouched for by the state.  *Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *7-8 (E.D. Wis. Mar. 27, 2018) (citing *Radaj v. ARS Nat'l Servs.*, 2006 U.S. Dist. LEXIS 68883, at *10 (E.D. Wis. Sept. 12, 2006).

ACA also argues that "[t]o the extent the allegations claim violations of state law as mirroring those of federal law, such claims by statute cannot be maintained." (Dkt. No. 15 at 24-25) (citing Wis. Stat. § 425.301(4) and *Brusewitz v. Law Offices of Gerald E. Moore & Assoc., P.C.*, 2006 WL 3337361, at *3 (W.D. Wis. Nov. 15, 2006)).  *Brusewitz* and Wis. Stat. §

29

425.301(4) do not support dismissal of Plaintiffs' WCA claims; they simply require "that a plaintiff may not recover under both the FDCPA and the WCA for the same conduct." *Brusewitz*, 2006 U.S. Dist. LEXIS 83712, at *9. In fact, *Brusewitz* held the plaintiff could proceed to trial on overlapping FDCPA and WCA attorney involvement claims. 2006 U.S. Dist. LEXIS 83712, at *8. The FDCPA and WCA provide different remedies, and dismissing the WCA claims would be premature. *Compare,* 15 U.S.C. § 1692k(2)(A) (statutory damages "as the court may allow, but not exceeding $1,000") *with* Wis. Stat. § 425.304 (statutory damages of twice the finance charge associated with the transaction, "except that the liability . . . shall not be less than $100 nor greater than $1,000"). That ACA's conduct also violates the FDCPA is not a reason to dismiss Plaintiffs' WCA claims. *E.g., Al*, 2018 U.S. Dist. LEXIS 70321, at *10, n.2.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant's motion to dismiss should be denied.

Respectfully submitted,

Dated: May 14, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
    John D. Blythin (SBN 1046105)
    3620 East Layton Avenue
    Cudahy, WI 53110
    (414) 482-8000; (414) 482-8001 (fax)
    jblythin@ademilaw.com

    ***Counsel for Plaintiff and the Proposed Class***