# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

DEBRA MALONEY, ELAINE BONIN, and
DEBORAH OZIER, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiff,

vs.

ALLIANCE COLLECTION AGENCIES, INC.,

        Defendant.

Case No.: 17-cv-1610

**PLAINTIFF'S BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

Hon. Nancy Joseph

      Plaintiffs Debra Maloney, Elaine Bonin, and Deborah Ozier (collectively "Plaintiffs"),

through counsel, submit the following brief in support of their Motion for Judgment on the

Pleadings with respect to their claims against Defendant Alliance Collection Agencies, Inc.

("ACA" or "Defendant"). For the reasons stated below, the Court should grant Plaintiffs' motion

for judgment on the pleadings and enter judgment in Plaintiffs' favor.

## INTRODUCTION

      Plaintiffs filed a complaint alleging violations of the federal Fair Debt Collection

Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs.

421-427, Wis. Stats (the "WCA") (Dkt. No. 1). Plaintiffs alleged that ACA mailed Plaintiffs and

a class of similarly situated individuals a series of debt collection letters that would confuse or

mislead the unsophisticated consumer as to their rights to dispute the alleged debt referenced in

ACA's letters. Specifically, ACA mailed each Plaintiff an initial collection letter that informed

the consumer that ACA would assume the debt was valid unless the consumer disputed it within

thirty days after receiving that letter. ACA then mailed each plaintiff a "follow-up" collection

letter, which again informed the consumer that ACA would assume the debt was valid unless the consumer disputed it within thirty days after receiving that second letter. ACA sent these follow-up letters fewer than 30days after it mailed its initial letters.

ACA filed its Answer on February 1, 2018. (Dkt. No. 7). In its Answer, ACA admits all facts necessary to finding that ACA's follow-up letters violate the FDPCA as a matter of law.

ACA's follow-up letters impermissibly deceive and confuse the consumer. The validation notice informs the consumer that she has 30 days to dispute the debt, and that the debt collector will provide verification if she disputes it in writing during the thirty-day period. If she disputes it during the thirty-day period, the debt collector cannot assume the debt is valid. If she disputes it in writing during the thirty-day period, the debt collector must cease collection until it provides verification of the debt or a copy of a judgment. 15 U.S.C.§1692g(b). If the consumer disputes the debt after the validation period has expired, however, the debt collector may continue to assume the debt is valid and need not relent in its collection efforts.[1] *Id.*

The FDCPA requires the debt collector to provide the disclosures required by 15 U.S.C. § 1692g clearly and effectively. ACA's letters contain contradictory validation notices that are inherently false, confusing and misleading, and a consumer who received a series of letters like the ones ACA mailed to Plaintiffs would have no way of knowing when the validation period actually ended: thirty days after she received the initial notice or thirty days after she received the second validation notice. By statute, the validation period runs from the date the consumer receives an initial collection letter containing the validation notice. 15 U.S.C. § 1692g(b). When

---

[1] Notably, consumers do retain some rights after the thirty-day period. For example, even though the debt collector is not required to cease collection or provide verification when a debt is disputed after the validation period has run, it still must include the dispute in the consumer's credit report.15 U.S.C. § 1692e(8); *Evans v. Portfolio Recovery Assocs., L.L.C.*, 2018 U.S. App. LEXIS 11372 (7th Cir. 2018).

the consumer received ACA's follow-up letter, she would have fewer than thirty days to trigger her *statutory* dispute rights, which include a temporary (and sometimes permanent) cessation of collection activities. Thus, a statement in a follow-up letter, sent days or weeks later and within the thirty-day period in the first letter, that informs the consumer that she still has thirty days to dispute the debt, creates the risk that the consumer will inaccurately believe the dates in the follow-up letter rather than the initial letter and dispute the debt *after* the statutory validation period has expired.

Whether a debt collector provides verification to consumers who dispute a debt outside the thirty-day period does not matter because the debt collector is required to effectively inform the consumer that she can *require* ACA to provide verification or cease collection by disputing the debt within the thirty-day period. A debt collector that is not required to comply with § 1692g(b) is not required to cease collection while verification is pending, and may provide verification that would be inadequate under § 1692g(b). Moreover, other collection agencies may use identical form letters but process disputes differently. As a matter of law, the debt collector must clearly state the validation period. ACA's letters contain contradictory and confusing statements that the thirty-day period begins to run from two different dates, and necessarily "misrepresent or cloud" the length of the validation period. *See Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2005). For this reason, its follow-up letters violate the FDCPA as a matter of law. *See, e.g., Seplak by Seplak v. IMBS, Inc.*, 1999 U.S. Dist. LEXIS 2106, at *12 (N.D. Ill. Feb. 23, 1999).

**FACTUAL BACKGROUND**

Each plaintiff is an individual who resides in the Eastern District of Wisconsin.  (Dkt. No. 1 at ¶¶ 3-5). Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), and a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that ACA attempted to collect from her a debt incurred for personal, family, or household purposes, namely medical services. (Dkt. No. 1 at ¶¶6-7) ACA is a collection agency who mailed a series of debt collection letters to each plaintiff regarding alleged medical debts owed to various entities associated with Aurora Health Care services (collectively "Aurora"). (Dkt. No. 1 at ¶¶8-11, 12, 35, 62)

ACA mailed each plaintiff an initial debt collection letter, attempting to collect one or more alleged debts owed to Aurora, and containing a "validation notice" that informed her that she had thirty days to dispute the alleged debt referenced in that letter.  (Dkt. No. 1 at ¶¶ 17-18, 40-41, 67-68) Fewer than thirty days after mailing the first collection letter, ACA mailed each plaintiff a second letter, which attempted to collect the same debts described in the initial letter, and reiterated the same validation notice. (Dkt. No. 1 at ¶¶ 20-26, 43-49, 70-77) The follow-up letters ACA mailed to Plaintiffs Bonin and Ozier also attempted to collect additional alleged debts not stated in the initial collection letter.  (*Compare* Dkt. No. 1, Exhibit C *with* Dkt. No. 1, Exhibit D; *Compare* Dkt. No. 1, Exhibit E *with* Dkt. No. 1, Exhibit F)  Each letter ACA mailed used a substantially identical validation notice closely tracking 15 U.S.C. § 1692g(a):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid.If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Dkt. No. 1, Exhibits A-F).

4

Each plaintiff was confused by ACA's letters and confused about whenACA would assume her debts were valid.  (Dkt. No. 1, ¶¶ 33-34, 60-61, 88-89).  Plaintiffs filed this Complaint on November 20, 2017.  (Dkt. No. 1)

ACA filed its Answer on February 1, 2018, (Dkt. No. 7).  In its Answer, ACA alleges that it is "without sufficient information to form a belief" as to whether ACA actually mailed the letters in question to the Plaintiffs.  (Dkt. No. 7 at ¶¶ 8, 11, 12, 14, 21, 24, 25, 26, 34, 37, 38, 40). Because ACA "could have informed [itself] on the issues in question 'with the slightest effort,'" its denials are ineffective for the purposes of opposing Plaintiff's judgment on the pleadings. *E.g., FDIC v. Coleman*, 2012 U.S. Dist. LEXIS 159374, at \*3-4 (N.D. Ill. Nov. 7, 2012) (quoting *Exch. Nat'l Bank of Chi. V. Brown*, 1985 U.S. Dist. LEXIS 16958, at \*6 (N.D. Ill. Aug. 9, 1985).

## ARGUMENT

### I.   LEGAL STANDARDS

#### A.   Standard on a Motion for Judgment on the Pleadings

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In considering a motion for judgment on the pleadings, a district court "view[s] all of the facts in a light most favorable to the non-moving party," and the court may grant the motion only if "it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." *United States v. Wood*, 925 F.2d 1580, 1581-1582 (7th Cir. 1991) (internal citation omitted). "The district court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true." *Id*. (citing *Flora v. Home Federal Savings and Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982). For the purposes of a motion under

Rule 12(c), "[t]he pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).

For the purposes of Plaintiffs' motion, "[t]he appropriate standard for a judgment on the pleadings is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Petersen Sand & Gravel v. Maryland Casualty Co.*, 881 F. Supp. 309, 313 (N.D. Ill. 1995) (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). Although the denial of an allegation in a responsive pleading may be sufficient to render an allegation contested, where a party denies an allegation under Fed. R. Civ. P. 8(b)(5) due to "lack of knowledge or information sufficient to form a belief about the truth of an allegation," such a denial may be insufficient to oppose a motion for judgment on the pleadings if the professed lack of information is not plausible. *E.g., Coleman*, 2012 U.S. Dist. LEXIS 159374, *3-4, 2012 WL 5429151 (N.D. Ill. November 7, 2012. Any "reasonable investigation" would allow ACA to know whether it mailed these letters, and whether these letters contained the alleged content, and ACA's failure to undertake "even a minimal investigation of available documents render[s] such facts . . . admitted." *Brown*, 1985 U.S. Dist. LEXIS 16958, at *6; *see also, Summerville v. Covington Coal LLC*, 2016 U.S. Dist. LEXIS 29076, at *3 (S.D. Ind. Mar. 7, 2016) ("The hurdle for claiming 'lack of knowledge' under Rule 8(b)(5) is 'higher than the absence of actual knowledge.'") (quoting *Coleman*, 2012 U.S. Dist. LEXIS 159374, at *4).  ACA's "assertion of ignorance is obviously a sham[,]" and this court may, and should, deem ACA's contentions as admitting the mailing and content of its letters. *Hofmann v. Aspen Dental Mgmt.*, 2010 U.S.

Dist. LEXIS 94185, at *3-4 (S.D. Ind. Sept. 9, 2010) (quoting *American Photocopy Equipment Co. v. Rovico, Inc.*, 359 F.2d 745, 747 (7th Cir. 1966)).

## B. FDCPA Standards

"The FDCPA was enacted in part 'to eliminate abusive debt collection practices by debt collectors' . . . regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*,109 F.3d338 (7th Cir. 1997) (quoting 15 U.S.C. § 1692(e)). The FDCPA broadly prohibits unfair or unconscionable collection methods; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692e, 1692f, and 1692g. The FDCPA is a strict liability statute, and plaintiffs in FDCPA cases do not need to allege or prove intent, bad faith, or negligence. *Randolph v. IMBS, Inc.*,368 F.3d 726, 729 (7th Cir. 2004); *Ross v. MRS Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007). Instead, the Seventh Circuit strictly applies the FDCPA's "comprehensive and reticulated statutory scheme, involving clear definitions, precise requirements, and particularized remedies[.]" *Evans*, 2018 U.S. App. LEXIS 11372, at *14; *see, e.g., Janetos*, 825 F.3d at 324 ("Congress decided that the failure to make the disclosure [of the name of the creditor] is a failure the Act is meant to penalize."); *Jang*, 122 F.3d 480, 484 (7th Cir. 1997) ("it is for Congress, and not the courts, to close this alleged loophole in the FDCPA."). The FDCPA provides "particularized remedies," and courts cannot rewrite the statute to authorize remedies other than those specified in 15 U.S.C. § 1692k. *E.g., Bishop v. Ross Earle & Bonan, P.A.,* 817 F.3d 1268, 1274 (11th Cir. 2016) ("The court will not judicially fashion a 'waiver remedy' for violations of § 1692g when the FDCPA identifies civil liability as the remedy for noncompliance."); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877,

882 (7th Cir. 2000) ("all private actions under the Fair Debt Collection Practices Act are for damages.").

Whether conduct violates the FDCPA is judged from the standpoint of a hypothetical "unsophisticated consumer." *Avila,* 84 F.3d at 227; *Gammon v. GC Services, LP*, 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is objective; whether the plaintiff or any class members were actually misled is not an element of a cause of action because the FDCPA prohibits debt collectors from making false, deceptive, or confusing statements, and the freedom from material misrepresentations is a legally protected interest that confers standing whether theplaintiff was personally deceived or not. *Bartlett*, 128 F.3d at 499; *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, at *6-9 (E.D. Wis. June 12, 2017). The hypothetical unsophisticated consumer reads collection letters literally but does not read them idiosyncratically, and the critical question in evaluating whether a collection letter violates the FDCPA is if the letter may similarly confuse or mislead "a significant fraction of the population[.]" *Durkin*, 406 F.3d at 414 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

The Seventh Circuit treats claims that a debt collection letter is false, deceptive, misleading, or confusing as a question of fact. *Evory*, 505 F.3d at 775-76 (7th Cir. 2007); *see also Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 628 (7th Cir. 2009) ("[D]ismissal is only appropriate in 'cases involving statements that plainly, on their face, are not misleading or deceptive.'"); *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812, 814-15 (7th Cir. 2016)). Whether a collection letter is misleading or confusing requires a "fact-bound determination of

how an unsophisticated consumer would perceive the statement[.]" *Boucher*, 880 F.3d at 367;

*see also McMillan*, 455 F.3d at 760; *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir.

1999).

However, where a debt collector states the information that 15 U.S.C. § 1692g requires it

to disclose in an ambiguous or confusing manner, the debt collector violates the FDCPA as a

matter of law. Plaintiffs need not put forth any evidence of actual confusion if the letter has the

"potential to confuse an unsophisticated consumer[.]" *Janetos*, 825 F.3d at 323 (quoting

*Chuway*, 362 F.3d at 949); *see also, Francisco v. Doctors &Merchants Credit Serv.*, 1998 U.S.

Dist. LEXIS 12234, at *20 (N.D. Ill. July 29, 1998) ("[*a*]*pparent* contradictions of validation

notices are . . . thought to evidence per se 'confusingness[.]'") (emphasis in original).

## II. MAILING A CONSUMER A SECOND VALIDATION NOTICE DURING THE VALIDATION PERIOD IS CONFUSING AND MISLEADING AS A MATTER OF LAW BECAUSE IT CONTRADICTS AND OVERSHADOWS THE DISCLOSURE THAT THE CONSUMER HAS THIRTY DAYS TO NOTIFY THE DEBT COLLECTOR THAT THE DEBT IS DISPUTED.

ACA's letters violate the FDCPA as a matter of law. "To satisfy § 1692g(a), the debt

collector's notice must state the required information 'clearly enough that the recipient is likely

to understand it.'" *Janetos v. Fulton Friedman &Gullace, LLP*, 825 F.3d 317, 321 (7th Cir.

2016) (quoting *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004)). The

consumer, reading ACA's letters alongside each other, would undoubtedly be left "scratching his

head" trying to figure out when the statutory validation period would end. *See Avila*, 84 F.3d at

226. Because a debt collector cannot mislead or confuse the consumer about her validation

rights during the validation period, ACA's conduct violates the FDCPA. *Durkin*, 406 F.3d at

417-18; *Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12.

**A.    The debt collector must disclose the consumer's statutory rights in a straightforward manner, and confusing disclosures violate the FDCPA.**

Congress created the statutory debt validation process because of the "recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). The straightforward statutory validation processwas adopted in 15 U.S.C. § 1692g:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) **Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and

address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

. . .

"[T]he FDCPA does not assume that the recipient of a collection letter is aware of her right to require verification of the debt." *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 90 (2d Cir. 2008). Hence, Congress bifurcated the validation statutes: § 1692g(a) requires the debt collector to arm the consumer with the information she needs to effectively dispute the debt, and § 1692g(b) specifies the consumer's substantive validation rights. Notably, § 1692g(a) *does not* confer any substantive right to obtain verification of the debt or require the debt collector cease collection. *See, e.g., Jang*, 122 F.3d at 483.[2] Instead, § 1692g(a) simply requires the debt collector provide the consumer with the information that allows her to know whether, when, and how to communicate her dispute. *Jang*, 122 F.3d at 483. If she disputes it, the debt collector must report the debt as disputed, *see* 15 U.S.C. § 1692e(8), and if she disputes it in writing

---

[2] The "informational" rights created by § 1692g(a) are still unquestionably "substantive" for the purpose of conferring Article III standing. *E.g., Janetos v. Fulton Friedman &Gullace*, 2016 U.S. Dist. LEXIS 189250, at *5-6 (N.D. Ill. Sept. 21, 2016); *see also, Byrne v. Or. One, Inc.*, 2017 U.S. Dist. LEXIS 132538, at *9-10 (D. Or. July 18, 2017) (collecting cases and concluding that "the overwhelming majority of district courts to address standing in FDCPA cases have also rejected defendants' post-*Spokeo* standing challenges."). 15 U.S.C. § 1692g(b) also creates a substantive informational right to freedom from communication that overshadows or conflicts with the disclosure of her dispute rights.

In fact, because Congress expressly requires debt collectors to arm consumers with this information—including the length of the validation period—the failure to provide it not only confers standing, but is *per se* material. *Janetos*, 825 F.3d at 324 ("we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough.").

within the thirty-day period, the debt collector must cease collection until it provides verification. 15 U.S.C. § 1692g(b).

**B.    The validation notice does not create any statutory rights.**

The debt collector does not actually create any statutory rights for the consumer when it provides the validation notice; it simply informs the consumer that she has thirty days to dispute the debt and that, if she does so in writing, the debt collector will provide verification.  For example, in*, DiRosa v. North Shore Agency, Inc.*, 56 F. Supp. 2d 1039, 1040 (N.D. Ill. July 15, 1999), the debt collector mailed a second validation notice after the validation period ended.  The consumer sued the debt collector, alleging that the follow-up validation notice confused and misled her about her federal rights.  The court dismissed the claim, holding that the notice "did not say or suggest that the consumer had federal rights, or that the debt collector would forego a demand for prompt payment or withhold advising credit reporting agencies of the purported delinquencies if the consumer sought verification after the 30-day period, ***nor was it required to do so***." (emphasis added). *Id.* Although the debt collector must cease collection pending verification if the consumer disputes the debt in writing during the thirty-day period triggered by the *initial* validation notice, *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018), "[t]hat constraint upon the debt collector is not . . . included in the validation notice." *DiRosa*, 56 F. Supp. 2d at 1040.

The consumer has just thirty days after she receives the validation notice to submit a written dispute, which triggers the requirement that the debt collector cease collection activities pending verification.  15 U.S.C. § 1692g(b).  "Under section 1692g(b) a consumer must dispute a debt *in writing,* within **an initial thirty-day period**, in order to trigger a debt validation

process." *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) (emphasis in bold added, emphasis in italics in original). The Seventh Circuit recently adopted the same approach that the First Circuit adopted in *Brady*:

> Section 1692g(b) "confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Brady*, 160 F.3d at 67. . . . If the meaning of "disputed debt" as used in § 1692g(b) carried over to § 1692e(8), then, in order to trigger the limited protection of § 1692e(8), a consumer would be required to submit written notice to a debt collector ***within the initial thirty-day period***.

*Evans*, 889 F.3d at 348 (emphasis added) (quoting *Brady*).

Hence, the debt collector provides the validation notice for two reasons. First, the validation notice serves an informational purpose, arming the consumer with the information she needs to determine whether and how she should register a dispute.15 U.S.C. § 1692g(a); *see Jacobson*, 516 F.3d at 95. Second, the validation notice serves a substantive purpose *for the debt collector*. It initiates the "thirty-day period" after which the debt collector is not required to provide verification of the debt upon the consumer's written dispute.

Once the consumer receives the validation notice---irrespective of when the "initial communication" actually occurred---the thirty-day clock begins ticking. 15 U.S.C. § 1692g(b); *see also, Vayngurt v. Sw. Credit Sys., L.P.*, 2016 U.S. Dist. LEXIS 142680, at *13 (E.D.N.Y. Oct. 14, 2016) ("if the plaintiff waits more than thirty days to attend to the matter, she loses many of her rights under the FDCPA.") (quoting *Harry v. Pentagroup Fin., LLC*, 2007 U.S. Dist. LEXIS 17821, at *11 (E.D.N.Y. Mar. 14, 2007)). If the consumer disputes the debt in writing within the thirty-day period, she triggers the statutory protections under § 1692g(b), and the debt collector must cease collection. 15 U.S.C. § 1692g(b). If she does not, she forfeits her statutory

right "to demand the cessation of all collection activities." *Evans*, 889 F.3d at 348 (quoting *Brady*, 160 F.3d at 67). Absolutely nothing in 15 U.S.C. § 1692g or the FDCPA generally requires or even allows a debt collector to extend the validation period or "restart the clock" by mailing a second validation notice.Even if the debt collector mails a second validation notice, it does not trigger a new "thirty-day period"because the "consumer would be required to submit written notice to a debt collector within the initial thirty day period," *Evans*, 889 F.3d at 348, which is triggered by the validation notice triggered by the "initial communication." 15 U.S.C. §§ 1692g(a)(3)-(5) (debt collector must provide notice of thirty-day validation period "[w]ithin five days after the *initial communication* . . . .") (emphasis added) and 1692g(b) ("If the consumer notifies the debt collector in writing *within the thirty-day period described in subsection (a)*. . . .") (emphasis added). As several courts have observed, "[u]nder its ordinary meaning, 'there can only be *one* "initial communication" between a debt collector and a consumer, and any communication that follows the "initial communication" is necessarily *not* an "initial" communication.'" *Dorsey v. Schumacher*, 2015 U.S. Dist. LEXIS 16580, at *7 (D. Or. Feb. 11, 2015) (quoting *Derisme v. Hunt Leibert Jacobson, PC*, 2010 U.S. Dist. LEXIS 119351, 2010 WL 4683916, at *5 (D. Conn. Nov. 10, 2010)) (emphasis in original).

The debt collector may, of course, ***choose*** to validate a debt even if the consumer does not trigger her rights under § 1692g(b), but doing so does not absolve the debt collector of liability for misinforming the consumer as to when the statutory protections cease.*See McCabe*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 9, 2003). As long as the debt collector is not required to provide verification, it cannot be liable under § 1692g(b) for providing inadequate verification or continuing to collect the debt while verification is pending. *Id.*; *see also, Haddad v. Alexander,*

14

*Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt collector was liable under § 1692g(b) for continuing to collect after providing inadequate verification). The "ultimate power" conferred by § 1692g(b) is not simply triggering verification, it is requiring the debt collector to cease collecting pending verification. *Evans*, 2018 U.S. App. LEXIS 11372, at *16; *Brady*, 160 F.3d at 67; *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013). A debt collector voluntarily validating the debt could indefinitely continue or even ramp up its collection efforts while it was "preparing" verification in the hopes that the consumer would pay the debt in the meantime. *See, e.g., Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, at *6-9 (D. Haw. Aug. 16, 1990); *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) (explaining that, "[i]n *Bailey*, the court held that, when a consumer first paid the debt and then *timely requested verification* of the debt, the debt collector violated the FDCPA by failing to provide such verification and keeping the consumer's payment.") (emphasis added).

To ensure the consumer does not inadvertently forfeit this "ultimate power," the FDCPA requires that debt collectors disclose the information the consumer needs---the amount of the debt, the name of the creditor to whom the debt is owed, and the consumers' rights to dispute the debt---in a non-confusing manner. *E.g., Chuway*, 362 F.3d at 949 (amount of the debt must be clear); *Janetos*, 825 F.3d at 323 (name of the creditor must be clear); *Bartlett*, 128 F.3d at 500-01 (effect of disputing the debt must be clear); *Chauncey*, 118 F.3d at 519 (length of the validation period must be clear). Following the Seventh Circuit and courts throughout the country, Congress amended the FDCPA to expressly prohibit communication that overshadows, conflicts

with, or confuses the disclosure of the consumer's dispute rights. 15 U.S.C. § 1692g(b);

*Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 n.1 (7th Cir. 2012).

A follow-up collection letter that falsely states the amount of time remaining in the

validation period violates § 1692g(b). In *Durkin*, the Seventh Circuit noted that a follow-up

collection letter that contradicts the validation notice in the initial collection letter would violate

the FDCPA as a matter of law:

> [T]he plaintiffs point out that a "debt collector may not overshadow or contradict [the validation notice] with other messages sent . . . within the validation period." To avoid such overshadowing or contradiction, the plaintiffs argue that Equifax should have reiterated or referred to the validation notice in its follow-up collection letters. However, there is no need for such a blanket rule. While some follow-up letters may certainly go over the line, in general, not every follow-up letter demanding payment during the validation period overshadows or contradicts a validation notice; thus**, not every follow-up letter sent during the validation period must automatically reiterate the safe-harbor validation notice, refer back to that notice, or remind debtors about the validation periodand the time remaining in that period**. Therefore, the mere absence of any such reiterations and reminders in the follow-up collection letters does not alone generate an unacceptable level of confusion so as to warrant summary judgment for the plaintiffs. Rather the matter turns on whether the specific text contains any impermissible overshadowing or contradiction with respect to the validation notice.
>
> [T]he specific text in the follow-up letters at issue, contrary to the plaintiffs' assertions, does not "clearly" overshadow or contradict the validation notice from the initial letter so as to entitle the plaintiffs to summary judgment. **For instance, these letters do not indicate that the time for disputing the debt has passed. Nor do they misrepresent or cloud the amount of time remaining to dispute the debt.**

*Durkin*, 406 F.3d at 417 (citations omitted) (emphasis added).

Notably, *Durkin* instructs district courts a debt collector need not "reiterate the safe-

harbor validation notice, refer back to that notice, or remind debtors about the validation period

and the time remaining in that period." *Id.* at 417. *Durkin* further instructs district courts that a

16

follow-up letter violates the FDCPA if it contains statements that "misrepresent or cloud the amount of time remaining" in the validation period. *Id.* at 417. As a result, a debt collector who chooses to "reiterate the safe-harbor validation notice . . . and the time remaining in that period[,]" must do so in a way that does not "misrepresent or cloud the amount of time remaining" in the validation period. *Id.* at 417. Basically, if the unsophisticated consumer looking at a follow-up letter alongside the initial collection letter would be confused or misled about how much time she still has to dispute the debt, the debt collector violates the FDCPA.

The FDCPA forbids debt collectors from overstating the length of the validation period as well as understating it. *Durkin*, 406 F.3d at 417 (a collection letter overshadows the validation notice if it "misrepresent[s] or cloud[s] the amount of time remaining to dispute the debt."). District courts apply *Durkin* consistently with this approach, noting that a representation may "misrepresent or cloud" the validation period by overstating it. *Durkin*, 406 F.3d at 417. For example, *Day v. Etan Gen., Inc.*, 2012 U.S. Dist. LEXIS 44354 (N.D. Ill. Mar. 30, 2012), concerned a series of letters where the first letter contained a validation notice, and the second letter --- mailed about 18 days later --- informed the consumer that "the thirty (30) day validation period discussed in our first letter concerning the validity of your debt will pass within the next three (3) weeks." *Id.* at 5. The district court granted summary judgment to the defendant because "[e]ven an unsophisticated debtor can be expected to understand that the use of the word 'within' does not indicate that the validation period expires on a date certain at the end of the third week." *Id.*, at *19. But the plaintiff stated a claim that the debt collector overstated the amount of time remaining in the validation period. If he had "present[ed] some evidence

demonstrating that the letter would actually confuse or mislead consumers[,]" there would have been a genuine issue for trial. *Id.*

The Seventh Circuit's holding in *Durkin* was not a departure from prior decisions but rather endorsed the approach that district courts were already taking. For example, district courts in the Northern District of Illinois decided two cases under circumstances similar to those in this case. In *Seplak by Seplak v. IMBS, Inc.*, 1999 U.S. Dist. LEXIS 2106, at *12 (N.D. Ill. Feb. 22, 1999), the Northern District of Illinois held that mailing a second validation notice during the validation period would undoubtedly confuse the consumer unless the debt collector explained when the validation period actually began. "A reasonable reading of the second letter could lead her to the conclusion that she must take action either 'at this time,'[3] within the two days remaining from the first letter's statement of validation rights, or within thirty days of receiving the second letter. Applying the unsophisticated consumer standard, we have no choice but to find that the letter may be confusing." *Id.* The district court further observed that the follow-up letter was confusing because of the contradictory validation deadlines, not because it urged the consumer to pay "at this time." *Id.* ("We do not go so far as to adopt plaintiff's theory that the second letter created a 'false sense of urgency.'").

In contrast to *Seplak*, in *Trull v. GC Servs. Ltd. Pshp.*, 961 F. Supp. 1199, 1204-05 (N.D. Ill. Mar. 24, 1997), the Northern District of Illinois held that the second validation notice would not confuse the consumer because the validation notice expressly made it clear that the validation period began with "your receipt of GC Services' *initial* written notice to you concerning this

---

[3] The follow-up collection letter in *Seplak* advised the consumer that she could "avoid accelerated collection activity by paying the balance at this time." *Seplak*, 1999 U.S. Dist. LEXIS 2106, at *2.

debt." *Trull*, 961 F. Supp. at 1205 (emphasis added in the decision). Basically, the explanatory language was present in *Trull* because, unlike the collection letters in *Seplak*, GC Services' letters explicitly informed the consumer that the validation period began when she received the *initial* written notice.[4]

ACA's follow-up letters, like the follow-up letter in *Seplak*, state the consumer may notify ACA "within 30 days after receiving *this notice*." (Dkt. No. 1 at 24, 47, 74) (emphasis added); *Seplak*, 1999 U.S. Dist. LEXIS 2106, at *2 n.1. Hence, for the purposes of Plaintiffs' confusion claims, the follow-up letters here are virtually indistinguishable from the follow-up letters in *Seplak*.

### C. The validation period is statutory, and is not restarted if the debt collector provides a subsequent validation notice in a follow-up letter within the validation period.

As discussed above, the validation notice is meant to *inform* consumers how to dispute the debt, but it does not *create* the substantive rights described in 15 U.S.C. § 1692g(b). *DiRosa*, 56 F. Supp. 2d at 1040. Numerous courts throughout the country have adopted the same reasoning as in *DiRosa*, holding that a validation notice mailed after the thirty-day period has expired does not create a new validation period. *E.g., Paige v. Waukesha Health Sys.*, 2013 U.S. Dist. LEXIS 96962, at *22-25 (E.D. Wis. July 11, 2013). Whether mailing a second validation

---

[4] *See also, Gammon v. Belzer*, 1997 U.S. Dist. LEXIS 5170, at *12 n.3 (N.D. Ill. Apr. 9, 1997) (observing that "the two copies received on different dates would create confusion as to the precise boundaries of the thirty-day period.") (quoting *Adams*, 926 F. Supp. at 528); *Kafele v. Lerner, Sampson, &Rothfuss, L.P.A.*, 2005 U.S. Dist. LEXIS 11127, at *9 (S.D. Ohio June 9, 2005) (adopting *Adams*, 926 F. Supp. at 527-28 and explaining that *Adams* held the validation notice was "inadequate because thirty day notice was overshadowed by other language threatening suit unless 'prompt' or 'immediate' payment was received *and because two notices were sent,* one to the debtors house and another to the debtors business, which were received on different days meaning the thirty day deadline began on different days.")

notice created another validation period was recently analyzed in detail by the Eastern District of

New York, which held that it does not:

> The thirty-day validation period under § 1692g, though running from the date that the debt collector provides the debtor with notice of its validation rights, is created by statute, not by the notice itself. Delmoral cites no authority for the proposition that a new thirty-day validation period can be created by a communication from a debt collector, much less for the proposition that any such period, although not contemplated by the statute, would nonetheless otherwise be strictly subject to all of its provisions. Furthermore, this proposed interpretation is in tension with the plain language of the statute itself, which appears to contemplate the creation of a single validation period. *See* § 1692g(a) ("Within five days after *the initial* communication with a consumer . . . *the* notice . . . *the* thirty-day period . . . ."). Indeed, if a validation notice sent after the initial validation period could in fact create a new validation period, the subsequent validation notice would always violate § 1692g(a), as it would not have been sent within five days of the initial communication. Finally, there is no reason to believe that multiple validation periods are necessary in order to give effect to the statute's purpose. As explained by the Senate Report accompanying the enactment of the FDCPA, the purpose of § 1692g was to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," an objective which was satisfied when CPA properly provided Delmoral with a validation notice in the December 15 Letter. *See* S. Rep. No. 95-382, at 4 (1977).

> Thus, a validation notice sent after the initial thirty-day period contemplated by § 1692g --- regardless of what rights it might create between the debt collector and the consumer in contract, equity, or otherwise --- does not establish a new statutory thirty-day period.

*Delmoral v. Credit Prot. Ass'n, LP*, 2015 U.S. Dist. LEXIS 133760, at *23-25 (E.D.N.Y. Sept.

30, 2015) (emphasis in original).

In support of its own motion for judgment on the pleadings, ACA has argued that a debt

collector does not violate the FDCPA when it mails a collection letter with a validation notice

after the validation period has closed. (Dkt. No. 15 at 13) ("The second threshold principle is

that sending a second validation notice after the 30-day period of the first notice cannot

overshadow the first notice, because the first period has ended."). For the purposes of this

motion, it is undisputed that mailing a validation notice outside the thirty-day period does not create a new validation period.

Nonetheless, ACA cites several cases holding that mailing a second validation notice *during* the validation period does not violate the FDCPA because, when the debt collector does this, it simply creates a new validation period, or extends the existing validation period. (Dkt No. 15 at 13-17). These cases were wrongly decided, and this Court should not follow them.[5] As discussed above, 15 U.S.C. § 1692g(b) establishes a set, thirty-day validation period, beginning when the consumer receives the writtenvalidation notice, and nothing in the statute provides for an extension or re-start of the validation period. *Compare Trull*, 961 at 1205 (follow-up validation notice properly stated validation period began to run with "your receipt of GC Services' *initial* written notice") (emphasis added in decision) *with, Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12 (Defendant's suggestion that the follow-up notice gave consumer an additional thirty days did not exculpate defendant from liability). There simply is no reason that mailing a second validation notice *during* the validation period would create a new validation period when mailing one after the validation period would not. The FDCPA does not authorize consumers to pursue the equitable remedy that the second validation notice restarts the validation

---

[5] *Brenker v. Creditors Interchange, Inc.*, 2004 U.S. Dist. LEXIS 4825, at *3 (S.D.N.Y. Mar. 25, 2004); *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381, 1386-87 (S.D. Fla. Oct. 30, 2014); and *Bridges v. Performant Recovery*, 2015 U.S. Dist. LEXIS 166703, at *6-10 (M.D. Ga. Dec. 14, 2015).

*Brenker* is also factually distinguishable. The debt collector's initial validation notice was in a debt collection letter that did not identify the original creditor. *Brenker*, 2004 U.S. Dist. LEXIS 4825, at *2. The debt collector, seeing the potential for confusion, subsequently mailed a second collection letter that provided this information. *Id.* at 3; *see also,Caudillo*, 2013 U.S. Dist. LEXIS 114305, at *8-9 (S.D. Calif. Aug. 13, 2013) ("failure to identify 'the original creditor unquestionably could 'frustrate a consumer's ability to intelligently choose his or her response[.]'") (quoting *Tourgeman v. Collins Fin. Services, Inc.*, 2011 U.S. Dist. LEXIS 81070, at *16-17) (S.D. Calif. July 26, 2011).

period instead of the exclusive civil damages remedy that the FDCPA *actually* provides. *Crawford*, 201 F.3d at 882; *Bishop*, 817 F.3d at 1273-74. Moreover, there is no basis for requiring that the validation period be tolled by the mailing of a follow-up letter because the validation notice does not inform the consumer that the debt collector will cease collection while it obtains verification; thus, there is no contractual or equitable basis for implying this condition after the initial validation period. 15 U.S.C. § 1692g(b). *See DiRosa*, 56 F. Supp. 2d at 1040.

Far from making clear that its follow-up notices actually extend the validation period, ACA's arguments in support of its own motion for judgment on the pleadings suggest its follow-up notices *do not* extend the validation period. (Dkt. No. 15 at 21 n.4). In discussing follow-up letters that referenced debts that were not stated in the initial collection letters, ACA notes that the consumers "would have been entitled to a full 30 days to dispute the 'new' debt contained in the second notices." (Dkt. No. 15 at 21 n.4). But ACA also notes that the second validation notice *probably does not* create a second validation period for any of the debts addressed in the initial collection letter: "Indeed, **an argument could be made** that the new *total* contained in the second letter was itself entitled to a new 30 day period to register a dispute." (Dkt. No. 15 at 21 n.4) (italics in original, bold added). The necessary corollary to this "argument [that] could be made" is its inverse---that "the new *total* contained in the second letter was [not] itself entitled to a new 30 day period to register a dispute." (Dkt. No. 15 at 21 n.4) (italics in original, alterations added). Moreover, assuming there is no "new *total*" in the follow-up letter (*e.g.,* the letters ACA mailed to Plaintiff Maloney), there would be no argument that the "*total* . . . was itself entitled to a new 30 day period." (Dkt. No. 15 at 21). ACA's arguments that it would voluntarily be bound by 15 U.S.C. § 1692g(b) simply do not wash because the validation period expires "by operation

of law, not at defendant's election." *See Pantoja v. Portfolio Recovery Assocs., LLC*, 78 F. Supp.

3d 743, 746 (N.D. Ill. Jan. 14, 2015), *aff'd.*, 852 F.3d 679 (7th Cir. 2017).[6]

> **D.** **Even if ACA's follow-up letter actually created a new thirty-day validation period, it would still violate the FDCPA because, in light of the initial letter, the consumer would not know that she still had thirty days to dispute the debt.**

Even if this court adopts the *Brenker* approach and holds that subsequent validation

notices mailed during the validation period do, in fact, entitle the consumer to an additional thirty

days to dispute the debt, the series of letters *still violates* the FDCPA. *E.g., Seplak*, 1999 U.S.

Dist. LEXIS 2106, at *12 (confusion wrought by contradictory statements of the validation

notice deadline itself violates FDCPA); *Adams*, 926 F. Supp. at 527-28 (same); *Christopher v.

RJM Acquisitions LLC*, 2015 U.S. Dist. LEXIS 12452, at *21-23 (D. Ariz. Feb. 3, 2015) (same).

Assuming the second validation notice entitled the consumer to a "supplemental" thirty-

day validation period, the length of that validation period would have to be communicated

effectively, *i.e.,* "in a nonconfusing manner." *Bartlett*, 128 F.3d at 500. But, where a consumer

has received prior notice that she has thirty days to dispute the debt, she would be left wondering

when the thirty-day period actually began---and, consequently, when it would end.[7] The *Seplak*

---

[6] Indeed, one of the debt collector's arguments in the district court in *Pantoja*, was that the debt collector had a policy to not revive time-barred debts. *Pantoja*, 78 F. Supp. 3d at 746. The district court easily disposed of the debt collector's argument, calling it "pure sophistry." *Id.*

[7] Although § 1692g(b) prohibits collection methods that are inconsistent with the disclosure of the consumer's rights to dispute the debt during "the thirty-day period," allowing debt collectors to overshadow the consumer's dispute rights before providing the validation notice would defeat the purpose of the prohibition on overshadowing. *E.g., Bartlett*, 128 F.3d at 500 ("the unsophisticated consumer is to be protected against confusion, whatever form it takes.").

Thus, the "thirty-day" period may actually last longer than thirty days if the "initial communication" occurs before the debt collector actually mails the validation notice.For example, if the "initial communication" was actually a telephone call, and the consumer immediately responded to that call by

court addressed ACA's exact argument, and held that the follow-up letter violated the FDCPA whether or not it restarted the validation period:

> Defendant suggests that the notice that accompanies the second letter grants an additional thirty days for the consumer to seek validation. Notwithstanding the fact that defendant failed to raise this argument in its opening brief, the argument highlights the potential confusion inherent in this second letter. Without the further explanation required by *Bartlett*, the unsophisticated consumer would not know her rights. A reasonable reading of the second letter could lead her to the conclusion that she must take action either "at this time," within the two days remaining from the first letter's statement of validation rights, or within thirty days of receiving the second letter. Applying the unsophisticated consumer standard, we have no choice but to find that the letter may be confusing.

*Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12. The district court further noted that the issue was not the statement that the consumer should act "at this time," but rather the contradictory validation notices: "We do not go so far as to adopt plaintiff's theory that the second letter created a 'false sense of urgency.'" *Id.*

"The aim of § 1692g is . . . to make the rights and obligations of a potentially hapless debtor as pellucid as possible. . . . we cannot adopt a construction of the Act that would . . . leave that debtor uncertain as to just when . . . she must, to be safe, send out a notice of dispute." *Jacobson*, 516 F.3d at 95. A debt collector violates the FDCPA if its validation notice leaves the unsophisticated consumer "uncertain as to her rights." *Muha*, 558 F.3d at 630 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). Thus, assuming the follow-up validation notice does create a new validation period, the confusion inherent in the contradictory representations would effectively shorten that validation period.

---

emailing the debt collector with notice that the debt was disputed, the debt collector would undoubtedly be required to process the dispute even though the consumer disputed the debt before she actually received the validation notice. Likewise, an "initial communication" letter that stated the debt collector assumed the debt was valid or misstated the validation period would overshadow the forthcoming notice.

Even the courts that dismiss similar claims acknowledge that ACA's practice is inherently confusing, but hold the confusion is not material. *Brenker*, 2004 U.S. Dist. LEXIS 4825, at *7 ("**if anything**, it re-started the period . . . .") (bold added); *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381, 1386-87 (S.D. Fla. Oct. 30, 2014) ("**If anything**, the second letter grants Plaintiff *additional* time to do so.") (bold added, italics in original). Even ACA agrees that the unsophisticated consumer would have no idea whether the second validation notice actually restarted the validation period or not. (Dkt. No. 15 at 2) ("**if anything**, the second notice serves to merely extend or renew the period").[8] This Court should not follow the reasoning in *Gesten* because it does not apply the plain language of the statute. *Compare Gesten*, 57 F. Supp. 3d at 1386 ("Defendant's second letter is not inconsistent with the thirty-day period that the FDCPA allows Plaintiff to dispute the debt.") *with* 15 U.S.C. § 1692g(b) "Any . . . communication during the 30-day period may not . . . be inconsistent with **the disclosure of the consumer's right to dispute the debt**. . . ."). *Gesten* and *Brenker* erroneously applied the prohibition on overshadowing communication, limiting that prohibition to communication that actually conflicts with the consumer's dispute rights rather than communication that conflicts with the *disclosure* of those rights. *Compare, e.g., Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12 *with, Brenker*, 2004 U.S. Dist. LEXIS 4825, at *9.

Since the validation period in ACA's initial letters contradicts the validation period in ACA's follow-up letters, ACA's follow-up letters did not effectively disclose the validation period. The debt collector may not mail the consumer a single letter that includes contradictory

---

[8] These "if anything" qualifiers demonstrate that the district courts, and ACA, are themselves unsure whether the debt collector would actually be bound by § 1692g(b) if the consumer disputed the debt more than thirty days after she received her the initial collection letter but fewer than thirty days after she received the follow-up notice.

statements about how long the consumer has to dispute her debt, nor may the debt collector tell the consumer in an initial telephone communication that she must dispute the debt within thirty days from that conversation, and follow up that conversation by mailing a validation notice that says she has thirty days from receipt of the letter. Thus, the debt collector cannot make these same contradictory statements in separate letters. *Durkin*, 406 F.3d at 417; *Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12.

Even assuming there is no *actual* contradiction because the second validation notice would create an entirely new validation period, "[*a*]*pparent* contradictions of validation notices are . . . thought to evidence *per se* 'confusingness[.]'" *Francisco*, 1998 U.S. Dist. LEXIS 12234, at *20. It does not matter whether mailing a second validation notice *actually* extends the time for the consumer to respond. Even if it does, the consumer would still be "uncertain as to just when . . . she must, to be safe, send out a notice of dispute." *Jacobson*, 516 F.3d at 95; *see also Seplak*, 1999 U.S. Dist. LEXIS, at *12; *Muha*, 558 F.3d at 630.

The confusion is plain – providing two dates for the same deadline is an outright contradiction. ACA's initial letter says that ACA will assume the debt is valid "[u]nless you notify this office within thirty days after receiving this notice" that you dispute the debt. ACA's follow-up letter, mailed several days later, also informs the consumer that ACA will assume the debt is valid "[u]nless you notify this office within thirty days after receiving this notice" that you dispute the debt." (Dkt. No. 1, ¶¶ 18, 24, 41, 47, 68, 74). The confusion inherent in the contradictory deadlines necessarily violates the FDCPA. *Durkin*, 406 F.3d at 417; *Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12; *Pantoja,* 852 F.3dat 687.

The series of letters is patently confusing and misleading. If the actual deadline is in the first letter, the second letter is confusing and misleading. If the actual deadline is the one stated in the second letter, its first letter is confusing and misleading. *Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12.

E. **ACA's actual dispute processing policies are relevant to damages, not liability.**

ACA's series of letters is inherently confusing about when the validation period ends. The consumer would not know whether ACA would assume the debt was valid 30 days after she received the initial letter, or 30 days after she received the follow-up letter. *Compare Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12, *with, Trull*, 961 F. Supp. at 1205.

Although a debt collector's individual dispute processing policies may be relevant to damages, they are not relevant to liability. *Janetos*, 825 F.3d at 325; *see also, e.g., Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Bishop*, 817 F.3d at 1274 n.4. The FDCPA specifies a civil remedy that provides for statutory damages if the violation results in a *risk of harm*, whether or not the consumer suffers *any* actual harm. *Evans*, 2018 U.S. App. LEXIS 11372, at *11-12; *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *Bartlett*, 128 F.3d at 499. District Courts are not at liberty to rewrite the statute and fashion a waiver remedy where "Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize." *Janetos*, 825 F.3d at 324; *Bishop*, 817 F.3d at 1274.

A debt collector may honor disputes that were communicated after the validation period has run, but it cannot misstate the law as to how and when the consumer may *require* it to respond. *McCabe.*, 272 F. Supp. 2d at 743-44. It cannot provide a deficient validation notice

simply because it offers to provide verification of the debt upon oral dispute. *E.g., Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1273-74 (11th Cir. 2016) ("We reject the notion that § 1692g gives debt collectors discretion to omit the 'in writing' requirement or cure improper notice by claiming waiver. The statute is clear. The debt collector 'shall' notify the consumer of her right to dispute the debt in writing. . . .The court will not judicially fashion a 'waiver remedy' for violations of § 1692g when the FDCPA identifies civil liability as the remedy for noncompliance.") (emphasis added); *see also, Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing.").

The Seventh Circuit expressly forbids debt collectors from sending follow-up notices during the validation period that confuse or contradict the initial validation notice, which is why a debt collector violates the FDCPA if its follow-up collection letters assume the debt is valid or direct consumers to communicate disputes by phone. *See, e.g., Trull*, 961 F. Supp. at 1205 (statement that "we assume this debt is correct" was inconsistent with the disclosure that the consumer had thirty days to dispute the debt); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87, 91-92 (3d Cir. 2017) (discussing *Durkin*, 406 F.3d at 417); *Flowers v. Accelerated Bureau of Collectors, Inc.*, 1997 U.S. Dist. LEXIS 3354, at *19-20 (N.D. Ill. Mar. 13, 1997), *modified on reconsideration*, 1997 U.S. Dist. LEXIS 6070 (N.D. Ill. Apr. 29, 1997) (because second collection notice demanding that consumer telephone or write "implies that Ms. Flowers could dispute her debt by telephone, it contradicts the validation notice."). As the Eleventh Circuit discussed in *Bishop*, a debt collector cannot cure a defect in its validation notice

by simply waving the requirement that a consumer dispute the debt in accordance with 15 U.S.C. § 1692g. *Bishop*, 817 F.3d at 1274; *Janetos*, 825 F.3d at 324 ("Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize.").

There is simply no practical difference between misstating the validation period and misstating whether a dispute must be communicated in writing. *Bartlett*, 128 F.3d at 500 ("It would be better if the courts just said that the unsophisticated consumer is to be protected against confusion, *whatever form it takes*.") (emphasis added). A follow-up letter that states a new expiration date for the validation period clearly "misrepresent[s] or cloud[s] the amount of time remaining to dispute the debt," and overshadows the validation notice. *Durkin*, 406 F.3d 417. There are "numerous cases which hold that inconsistent statements regarding the deadline to dispute a debt violate § 1692g." *Kafele*, 2005 U.S. Dist. LEXIS 11127, at *8-9 (collecting cases). ACA's practice of sending repeat validation notices are inherently inconstant statements about the validation notice deadline. *See, e.g., Trull*, 961 F. Supp. at 1205; *Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12-16; *Adams*, 926 F. Supp. at 527-28; *Christopher*, 2015 U.S. Dist. LEXIS 12452, at *21-23; *see also, Delmoral*, 2015 U.S. Dist. LEXIS 133760, at *16 ("A consumer who received the Second Letter within the initial validation period may also have a plausible cause of action under § 1692g based on the overshadowing of the initial validation notice . . . ."); *Paige*, 2013 U.S. Dist. LEXIS 96962, at *23-24 n.3; *Gammon*, 1997 U.S. Dist. LEXIS 5170, at *12 n.3.

The unsophisticated consumer, presented with contradictory deadlines for disputing the debt would undoubtedly be left scratching her head, wondering which deadline was the right one. *See, e.g., Seplak*, 1999 U.S. Dist. LEXIS 2106, at *12; *Adams*, 926 F. Supp. at 528. She would

potentially forego her statutory rights to dispute the debt, potentially by believing incorrectly that the 30-day period runs from receipt of the second letter. The consumer would also feel pressed to make her decision before she was statutorily required to do so. Just as ACA cannot mail a consumer a single letter that contradictorily states the validation period is both 30 days and 35 days, *see, e.g., Koller v. Midland Credit Mgmt.*, 2017 U.S. Dist. LEXIS 149936, at *8 (W.D. Mo. Sept. 15, 2017) (dismissing FDCPA claim that letter's "Reply By" date falsely advised consumer she had more than thirty days to dispute her debt because the consumer "would not assign the 'reply-by' deadline to her validation rights."), it cannot mail separate letters that convey that message.

## CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Motion for Judgment on the Pleadings and enter judgment in Plaintiffs' favor.

Respectfully submitted,

Dated: June 20, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
    John D. Blythin (SBN 1046105)
    3620 East Layton Avenue
    Cudahy, WI 53110
    (414) 482-8000; (414) 482-8001 (fax)
    jblythin@ademilaw.com

    ***Counsel for Plaintiff and the Proposed Class***