# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

DEBRA MALONEY, ELAINE BONIN, and
DEBORAH OZIER, Individually and on Behalf of
All Other Similarly Situated,

    Plaintiffs,

  v.                                              Case No. 17-CV-1610

ALLIANCE COLLECTION AGENCIES, INC.,

    Defendant.

---

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

On November 20, 2017, plaintiffs Debra Maloney, Elaine Bonin, and Deborah Ozier (the "Plaintiffs") filed a class action complaint against Alliance Collection Agencies, Inc. ("Alliance"), alleging that Alliance sent debt validation notices that violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Wis. Stat. §§ 421–427 (the "WCA"). (Docket # 1.) On February 1, 2018, Alliance submitted its answer. (Docket # 7.) Alliance filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Docket # 14.) Plaintiffs then filed their own motion for judgment on the pleadings. (Docket # 18.) I will now address both motions.

# BACKGROUND

The Plaintiffs allege that between December 2016 and September 2017, they each received two debt validation notices from Alliance within a 30-day period. (Docket # 1 at ¶¶ 12–89.). In every case, the second notice listed the same debts as the first notice. (*Id.*) The second notices sent to plaintiffs Bonin and Ozier also listed other debts and corresponding new totals. (*Id.*) Each notice contained the following language:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)

Plaintiffs allege that receiving two such notices for the same debts within a 30-day period was confusing or would be confusing to a consumer, leaving recipients unsure of how many days remained to dispute the debt. (*Id.* ¶¶ 27–28, 49–50, 76–78.) Plaintiffs Bonin and Ozier further allege that the second notices left them unsure of whether the 30-day validation period applied to all the debts listed or only those for which they had not received prior validation notices. (*Id.* ¶¶ 50 and 76). Plaintiffs Bonin and Ozier also allege that the second notices were or would be confusing as to the amounts owed. (*Id.* ¶¶ 55–58 and 83–86.) All plaintiffs allege that they had to spend time and money investigating these notices and their consequences. (*Id.* ¶¶ 33–34, 60–61, 88–89.)

## ALLIANCE'S MOTION FOR JUDGMENT ON THE PLEADINGS

1. *Applicable Rule*

Alliance moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). A defendant's motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2017). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Rule 12(b)(6) does not permit the court to consider matters outside the complaint without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d).

2. *Analysis*

Alliance argues that the validation notices described by the Plaintiffs did not violate either the FDCPA or the WCA, and therefore the complaint should be dismissed. I find that the complaint alleges facts sufficient to show that the notices might confuse an unsophisticated consumer. Therefore, I will deny the defendant's motion with respect to

Counts I and III. However, because the Plaintiffs appear to have abandoned their claims in Count II, I will grant the defendant's motion with respect to Count II.

*The FDCPA*

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. To that end, the FDCPA obliges debt collectors to refrain from "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e provides a non-exhaustive list of unlawful practices, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10). Furthermore, 15 U.S.C. § 1692f forbids using "unfair or unconscionable means to collect or attempt to collect any debt.

In addition to avoiding abusive debt collection practices, the FDCPA requires debt collectors to take affirmative steps to notify debtors of their rights. In relevant part, 15 U.S.C. § 1692g requires debt collectors to provide timely written notice as follows:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

[. . .]

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

In the event a consumer timely disputes the debt under (a), the debt collector must take further steps under (b):

> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. **Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt** or request the name and address of the original creditor.

(emphasis added)

Sections 1692e, 1692f, and 1692g(b) are all concerned with protecting consumers from confusion. The Seventh Circuit has held that "the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter." *McMillan v. Collection Prof'ls*, 455 F.3d 754, 758 (7th Cir. 2006) (citations omitted). "The consumer is to be protected against confusion, whatever form it takes, be it outright contradiction, literal overshadowing, or the failure to explain an apparent contradiction." *Id.* (internal quotations and citations omitted).

To state a claim under § 1692e, 1692f, or 1692g(b), a plaintiff must plausibly allege that a collection letter would materially mislead or confuse an unsophisticated consumer.

5

"[D]ismissal is only appropriate in 'cases involving statements that plainly, on their face, are not misleading or deceptive.'" *Id.* (quoting *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812, 814–15 (7th Cir. 2016)). *See also Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). The Seventh Circuit has cautioned that district courts should "tread carefully before holding that a letter is not confusing as a matter of law when ruling on Rule 12(b)(6) motion because 'district judges are not good proxies for the unsophisticated consumer whose interest the statute protects.'" *McMillan v. Collection Professional Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) (quoting *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501–503 (7th Cir. 1999)). "When a complaint alleges that a dunning letter is confusing . . . the plaintiff has stated a recognizable legal claim; no more is necessary to survive a Rule 12(b)(6) motion." *McMillan*, 455 F.3d at 758–59.

*Count I—All Plaintiffs*

Count I claims that the notices were "false, deceptive, and misleading statements that would mislead the unsophisticated consumer into believing that the validation period begins to run with her receipt of [the second notice] rather than [the first notice]." (Docket # 1 ¶ 123.) It also claims that the second notices "overshadow or contradict" the first notices' disclosure of the right to dispute the debt, and the disclosure that the debt collector would assume the debt was valid unless the consumer disputed the debt within 30 days. (*Id.* ¶¶ 124–125.) The Plaintiffs allege that the notices thus violated §§ 1692e, 1692e(10), 1692f, 1692(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b). (*Id.* ¶ 126.)

The Plaintiffs have alleged that the second notices were confusing, and under *McMillan*, that is all that is needed to state a claim. In order to dismiss this claim, I would have to find that the statements are plainly *not* misleading, such that there is no possibility the

6

Plaintiffs could produce evidence that the unsophisticated consumer would be confused. I cannot do so.

The first notice says that the debt collector will validate the debt if disputed within 30 days. The second notice, sent within 30 days of the first, says the same. Thus, when receiving the second notice, an unsophisticated consumer might be confused as to how much time remains to dispute the debt. Similarly, the notices sent to Plaintiffs Bonin and Ozier listed new debts in addition to the original debts, and repeated the language from the first notice regarding the 30-day validation period. There is at least a possibility that a consumer would be confused as to whether the new 30-day period applied only to the newly listed debts, or also to the debt in the first notice. This confusion may lead an unsophisticated consumer to wait until after the original 30-day validation period to dispute the original debt, unknowingly forfeiting the statutory right to compel Alliance to cease collection and validate the original debt.

Alliance argues that the second letter is not false or misleading because the Plaintiffs have not alleged that Alliance would not honor the new 30-day validation period. (Docket # 15 at 15–16.) Even if Alliance would voluntarily honor the new 30-day validation period, that would not be apparent to a consumer upon receipt of the letter. In other words, even if the notice were factually true, it could still confuse the consumer.

Furthermore, choosing to validate the debt does not absolve the debt collector of liability for misleading the consumer about her rights. *See McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 742–43 (N.D. Ill. July 8, 2003). There is a real risk that Alliance's second notice could mislead an unsophisticated consumer into forfeiting her rights under the FDCPA. The unsophisticated consumer is likely not aware that she has a statutory right to dispute the debt

7

within 30 days of the first notice, and that doing so will require the debt collector to cease collections activities while the verification is pending. When she receives the initial notice, she simply understands that if she wants to dispute the debt she has to do so within 30 days. When she receives the second notice, using identical language as the first to announce what is apparently a new validation period, she may reasonably assume that she has 30 days from that date to dispute the debt. Thus, a consumer who receives a second notice may reasonably wait until after the initial 30-day period to dispute the claim. In doing so, she unknowingly forfeits the statutory right to dispute the debt and trigger the ceasing of collections activities required by the statute.

Alliance argues that even assuming the notices were misleading, the complaint does not allege that the confusion was material. (Docket # 15 at 21–24.) Indeed, the Seventh Circuit has held that consumers "don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision." *Muha v. Encore Receivable Mgmt., In.,* 558 F.3d 623, 628 (7th Cir. 2009). *See also O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). But in fact, as explained above, the second notice could well steer a consumer to put off disputing the debt until after the window in which Alliance is statutorily required to cease collection activities and validate the debt. Thus, the confusion is material.

Alliance cites a number of cases supporting the proposition that a second letter sent within the validation period does not violate the FDCPA because it creates a new validation period. (Docket # 15 at 13–17.) However, those cases are not from the Seventh Circuit and I decline to follow them, as doing so would run afoul of the Seventh Circuit's clear precedent regarding the standard for examining a claim under the FDCPA.

8

Because I find that allegations in the complaint support a reasonable inference that an unsophisticated consumer would be materially confused by Alliance's notices, I will deny the defendant's motion for judgment on the pleadings with respect to Count I.

*Count II—Plaintiffs Bonin and Ozier*

Count II claims that the notices sent to Plaintiffs Bonin and Ozier listing additional debts and new totals were confusing and would mislead the unsophisticated consumer about the amount of the debt, in violation of §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(1). However, the Plaintiffs appear to have abandoned this claim. Their brief in opposition to this motion does not attempt to rebut the defendant's criticisms of this claim, or even mention confusion as to the amounts at all. The Plaintiffs' own motion for judgment on the pleadings, to which I turn later, contains no reference to confusion as to the amounts owed, only the validation period. (Docket # 19.) Thus, because the Plaintiffs appear to have abandoned this claim, I will grant the motion for judgment on the pleadings with respect to Count II of the complaint.

*Count III—WCA*

Count III of the complaint repeats the claims in Count I and adds a claim that the second notices "were sent as subsequent attempts to collect debts just days after the existence of these debts was first disclosed," in violation of Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

Similar to the FDCPA, the WCA's purpose is to "protect customers against unfair, deceptive, false, misleading, and unconscionable practices by merchants." Wis. Stat. § 421.102(2)(b). Section 421.104(1) forbids debt collectors to:

9

> (g) Communicate with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer;
>
> (h) Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer.

The WCA mandates that its provisions "shall be liberally construed and applied to promote their underlying purposes and policies." Wis. Stat. § 421.102(1). One of those purposes is "[t]o protect customers against unfair, deceptive, false, misleading and unconscionable practices." § 421.102(2)(b). Another is "[t]o permit and encourage the development of fair and economically sound consumer practices in consumer transactions." § 421.102(2)(c).

Alliance argues that "[t]o the extent the allegations claim violations of state law as mirroring those of federal law, such claims by statute cannot be maintained. See §425.301(4), Wis. Stat." (Docket # 15 at 25.) Section 425.301(4) forbids an action from being maintained under the WCA "*if a final judgment has been rendered* for or against that person with respect to the same violation under the federal consumer credit protection act" (emphasis added). Notably, § 425.301(4) does not prevent a plaintiff from simultaneously pursuing claims under both the FDCPA and the WCA, as in this case. In fact, plaintiffs often do so. *See e.g. Vomberg v. Praxis Financial Solutions, Inc.*, No. 15-CV-1043, 2016 WL 3282229, at *2 (E.D. Wis. June 14, 2016); *Bruesewitz v. Law Offices of Gerald E. Moore & Assocs., P.C.*, No. 06-C-400, 2006 WL 3337361, at *3 (W.D. Wis. Nov. 15, 2006); *Associates Financial Services Co. v. Hornik*, 114 Wis. 2d 163, 172–73, 336 N.W.2d 395 (Wis. Ct. App. 1983). Section 425.301(4) prevents a plaintiff from recovering under both statutes for the same conduct; it does not affect a plaintiff's ability to assert both claims in a complaint.

While a plaintiff may concurrently pursue claims under the FDCPA and the WCA, the complaint must state a claim under the WCA to avoid dismissal of the WCA claims. Here,

Alliance argues that "there are no facts to support that the letters threatened or harassed the Plaintiffs, either by communicating with such frequency or at such unusual hours, or by engaging in conduct which could reasonably be expected to harass plaintiffs." (Docket # 15 at 24.) Indeed, at most, the Plaintiffs allege that they received two letters within a 30-day period. Two letters a month is not so frequent as to threaten or harass a consumer in the ordinary sense of those words. *See Associates Financial Services Co. v. Hornik*, 114 Wis. 2d 163, 168, 169 (Ct. App. 1983) (concluding that making four to five calls per month to a debtor was not harassment).

Wisconsin courts have not provided much guidance on what sorts of behavior do give rise to violations of §§ 427.104(1)(g) and 427.104(1)(h). *See Security Finance v. Kirsch*, 382 Wis. 2d 271 (Wis. Ct. App. April 11, 2018) ("Wisconsin courts rarely discuss para. (1)(g)"). Cases that have directly applied these provisions have used the ordinary meanings of "threaten" or "harass," where some sort of intimidation or extreme annoyance was implicated, not confusion. *See Hornik*, 114 Wis. 2d at 168, 169.

Yet even if Alliance did not communicate too frequently or at unusual hours, the Plaintiffs argue that "conduct that confuses consumers into foregoing important statutory rights can reasonably be expected to harass Wisconsin consumers." (Docket # 16 at 29.) In other words, the Plaintiffs define these provisions of the WCA as capturing conduct expected not only to "harass" or "threaten" in the ordinary sense of those words, but to confuse as well. For support, the Plaintiffs turn to *Al v. Van Ru Credit Corp.*, No. 17-CV-1738, 2018 U.S. Dist. LEXIS 70321, at *5 (E.D. Wis. Apr. 26, 2018), which declined to dismiss claims under the WCA when related claims under the FDCPA survived. However, in *Al*, the complaint alleged some kind of "threat," not just confusion. *Id. See also* (Complaint at ¶¶ 34, 69, *Al v. Van Ru*

11

*Credit Corp.*) Also, unlike in this case, *Al* claimed the use of a threat under 15 U.S.C. § 1692e(5). Thus, *Al* does not directly support the proposition that behavior that is merely confusing is covered by the WCA.

The Plaintiffs also argue, somewhat vaguely, that Alliance's conduct is "especially problematic" because Alliance is a state-licensed collection agency, and the Department of Financial Institutions prohibits licensed collection agencies "from engaging in 'conduct which violates the Federal Fair Debt Collection Practices Act.'" (Docket # 16 at 29) (citing Wis. Admin. Code DFI-Bkg § 74.16(9).) In other words, the Plaintiffs would use the Wisconsin Administrative Code as a back door into liability under the WCA: debt collection activity that is confusing violates the FDCPA, therefore it violates DFI-Bkg § 74.19(9), therefore it violates the WCA. But the Plaintiffs have cited no authority for the proposition that violations of DFI-Bkg § 74.19(9) automatically give rise to liability under the WCA.

While the Plaintiffs' attempt to shoehorn their claims of confusion into the language of §§ 427.104(1)(g) and 427.104(1)(h) are not entirely convincing, neither can I say that at this juncture that they could not prevail on these claims. Although I cannot say as a matter of law that confusion under the FDCPA amounts to threats and harassment under the WCA, it is possible that an unsophisticated consumer could feel threatened or harassed by multiple confusing letters from a debt collection agency, especially arriving in short succession as they did. At this juncture, the statute's mandate to construe its provisions liberally convinces me to contemplate an interpretation of the statute that could encompass confusion. Thus, the WCA claim survives the motion for judgment on the pleadings.

# PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

   1.   *Applicable Rule*

On a motion for judgment on the pleadings, the court applies the same standard as a motion for summary judgment, except that the court may consider only the contents of the pleadings. All well-pleaded allegations in the Plaintiffs' pleadings are taken as true, but the inferences to be drawn from those allegations are viewed in a light most favorable to the nonmovant. *Petersen Sand & Gravel v. Maryland Casualty Co.*, 881 F. Supp. 309, 313 (N.D. Ill. 1995) (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). The court may not look beyond the pleadings, *United States v. Wood*, 925 F.2d 1580, 1581–82 (7th Cir. 1991), which include the complaint, the answer, and any attached written exhibits. *United States Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A court shall grant a motion for judgment on the pleadings if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

   2.   *Analysis*

The Plaintiffs argue that they are entitled to judgment as a matter of law because the facts in the pleadings show that Alliance violated the FDCPA and the WCA.

In order to have a factual basis on which to make this determination, the Plaintiffs ask the court to take the unusual step of disregarding many of the defendants' denials as

implausible. In its answer, Alliance responds to roughly half the paragraphs of the complaint with the following language: "Defendant is without sufficient information to form a belief as to the truth of the allegations contained in paragraph [number] of plaintiffs' Complaint and therefore **denies** same." This is the answer the defendant gives to the following paragraphs, *inter alia*:

> 9. Alliance is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.
>
> 11. Alliance is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Defendant is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).
>
> 12. On or about December 14, 2016, Alliance mailed a collection letter to Plaintiff Maloney regarding an alleged debt, allegedly owed to "LAKESHORE MEDICAL CLINIC OAK CREEK" ("Aurora").
>
> 13. Upon information and belief, the letter in Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Maloney inserted by computer.
>
> 14. Upon information and belief, the letter in Exhibit A is a form debt collection letter used by Alliance to attempt to collect the alleged debt.
>
> 17. Upon information and belief, Exhibit A was the first written communication Plaintiff received from Alliance.
>
> 138. Defendant is a licensed collection agency.

This is just a small sampling of the allegations about which Alliance claims it has insufficient knowledge to form a belief. It is incredible for "Alliance Collection Agencies" to assert that it does not know whether it is in the business of a collection agency, whether it uses the mails and telephone to collect consumer debts, what type of debts it collects, and whether it is a licensed collection agency. It strains credulity to the breaking point for Alliance to assert that it could not easily find out whether it mailed a particular letter, and if so whether the

letter was a form letter, generated by computer, of the type Alliance uses to attempt to collect debts, and whether Exhibit A was the first letter Alliance sent to the plaintiff.

The Seventh Circuit has held that a party's failure "to frankly reply on a matter, which it . . . must have had within its knowledge, exhibits a lack of fairness which completely discredits its statement that it is without knowledge of or information sufficient to form a belief as to the truth of said averment." *American Photocopy Equipment Co. v. Rovico, Inc.*, 359 F.2d 745, 746–747 (7th Cir. 1966) (citing *Harvey Aluminum (Inc.) v. N.L.R.B.*, 335 F.2d 749, 758 (1964) ("[A]n answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously sham. In such circumstances the facts alleged in the complaint stand admitted."). "Where the matter is one . . . to which the party can inform himself with the slightest effort, that party must perform a reasonable investigation to obtain the knowledge of such fact." *Exchange Nat. Bank of Chicago v. Brown*, No. 84 C 10801, 1985 WL 2274, at *2 (N.D. Ill. Aug. 9, 1985) (finding insufficient the denials of parties who asserted that they were without knowledge sufficient to either admit or deny allegations when the necessary information was easily obtainable); *see also FDIC v. Coleman*, 2012 U.S. Dist. LEXIS 159374, at *3–4 (N.D. Ill. Nov. 7, 2012).

Alliance responds to the Plaintiffs' criticisms of its answers by noting deficiencies in the Plaintiffs' complaint. (Docket # 20 at 5–6.) But typographical errors and other apparently unintentional errors in the Plaintiffs' complaint do not justify the glaring deficiencies in Alliance's answer. Neither does some degree of vagueness in the complaint exempt Alliance from making a good-faith effort to reasonably interpret and answer it. For example, Alliance explains that it did not have sufficient information to answer Paragraph 17's allegation that

15

"Exhibit A was the first written communication Plaintiff received from Alliance" because that statement is vague. (Docket # 20.) While certainly other interpretations of that statement are possible, both the plain language of the allegation and the context of the complaint suggest that the plaintiff means that this was the first letter Alliance sent to Maloney, and Alliance must answer that allegation in good faith.

I will grant Alliance leave to file an amended answer within fifteen days of this order. *See Love v. Collection Professionals, Inc.*, 2014 U.S. Dist. LEXIS 60716 (N.D. Ill. Apr. 30, 2014) (issuing a *sua sponte* order for counsel to file an appropriate amendment to the pleading). Because I am allowing Alliance to amend its answer, the Plaintiffs' motion for judgment on the pleadings shall be dismissed as moot.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that defendant's motion for judgment on the pleadings (Docket # 14) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that counsel for the defendant shall file an amended answer within fifteen (15) days of this order.

**IT IS FURTHER ORDERED** that plaintiffs' motion for judgment on the pleadings (Docket # 18) is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin this 6th day of November, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge